# Richmond

## STATE CAPITAL INSURANCE COMPANY V. THE MUTUAL ASSURANCE SOCIETY AGAINST FIRE ON BUILDINGS OF THE STATE OF VIRGINIA

March 3, 1978.

Record No. 761439.

Present: I'Anson, C.J., Carrico, Harrison, Cochran, Harman and Compton, JJ.

*Frank N. Cowan (Gordon, Cowan & Dodson,* on brief), for plaintiff in error.

*Edward A. Marks, Jr. (Sands, Anderson & Marks,* on brief), for defendant in error.

CARRICO, J., delivered the opinion of the Court.

In the court below, State Capital Insurance Company (hereinafter, State Capital) and The Mutual Insurance Company of Frederick, Maryland (hereinafter, Mutual of Frederick), sought to impose upon The Mutual Assurance Society Against Fire on Buildings of the State of Virginia (hereinafter, Mutual of Virginia) primary liability for a claim asserted by a party injured in a boating accident. Rejecting the contentions of State Capital and Mutual of Frederick, the trial court entered judgment in favor of Mutual of Virginia.

The case was heard below upon a stipulation of facts. The stipulation shows that the accident in question occurred June 13, 1971, when a motorboat owned by Robert O. Street and operated with his permission by Christopher McGee struck and injured Doris Ann Dawson while she was swimming in Morattico Creek, near the Rappahannock River. At the time, three insurance policies provided liability coverage to McGee in his operation of the boat. The policies were issued separately by State Capital, Mutual of Frederick, and Mutual of Virginia.

The insurance contracts were standard homeowners policies which contained provisions protecting the named insureds and relatives resident in their households from personal liability for damages for bodily injury and property loss. State Capital's policy was issued to Patsy J. McGee and Gerald F. McGee, parents of Christopher McGee, the operator of the boat which struck Doris Ann Dawson. The policy provided liability protection in the sum of $25,000. Mutual of Frederick's policy, also issued to the McGees, included liability coverage of

$100,000. Mutual of Virginia's policy, issued to Robert O. Street, the owner of the boat in question, and Doris W. Street, provided liability coverage of $50,000.

All three policies protected the insureds and permissive users of their watercraft from liability for boating accidents. The policies excluded from coverage an outboard motor, owned by an insured, of more than a specified horsepower. If specially declared, however, a larger motor could be covered for an additional premium. Although the outboard motor owned by Street and used on the boat in question exceeded the specified size, Mutual of Virginia's policy issued to Street contained a watercraft endorsement which described the oversized motor and the boat on which it was used. The endorsement stated that, for an additional premium of $5.00, the liability coverage of the policy would apply to Street's motor and boat.

None of the policies limited liability for an insured's use of a non-owned outboard motor. Thus, because the motor operated by Christopher McGee was non-owned, the policies issued to his parents by State Capital and Mutual of Frederick were applicable to the accident in question without special declaration or endorsement.

Of special concern in this appeal, each policy contained an "excess insurance" clause related to watercraft liability. Although varying slightly in wording, all the clauses had the same effect, viz., to provide that the liability coverage afforded by the particular policy would not apply to the extent other valid and collectible insurance was available to the insured.

Following the accident in question, Doris Ann Dawson brought an action against Christopher McGee for her injuries. Thereafter, the three insurance companies settled the claim, contributing a total of $30,000. In making settlement, each carrier reserved the right to litigate the issue of its liability for the loss.

Subsequently, seeking to recover the amount each had contributed to the settlement, State Capital and Mutual of Frederick brought separate actions against Mutual of Virginia. Both actions were predicated upon the theory that Mutual of Virginia was primarily liable for the loss. The actions were consolidated. The trial court ruled that Mutual of Virginia was not primarily liable and that the three companies should share

the loss pro rata "according to the amount of coverage provided."[1] Only State Capital has appealed, and it has named only Mutual of Virginia as an appellee. Because the judgment has become final with respect to Mutual of Frederick, this company will not be mentioned again.

State Capital asserts that the focus of this appeal must be upon "the validity of the 'excess' provision of Mutual of Virginia's policy," as determined by Code §§ 38.1-381(a)[2] and 38.1-381(a2)[3]. State Capital's argument proceeds as follows: By the watercraft endorsement added to its policy, Mutual of Virginia specially insured the specific boat involved in the accident. Accordingly, under § 38.1-381(a), Mutual of Virginia was required to insure the owner and any permissive user of the boat against negligence in its operation, with only those limitations upon coverage that are permitted by statute. The sole purpose of Mutual of Virginia's excess insurance clause is to limit coverage for accidents involving the boat. This limitation is not permitted by § 38.1-381(a) and, under § 38.1-381(a2), the limitation is void.

State Capital's argument continues: Its own policy provided only general liability insurance; the policy did not afford coverage to the specific boat in question or its owner. The policy, therefore, was not subject to the requirements of § 38.1-381(a), and the excess insurance clause contained therein was not invalid under § 38.1-381(a2). But, because Mutual of Virginia's

---

[1] Under the distribution ordered by the trial court, State Capital was held liable for $\frac{1}{7}$ of the $30,000 paid to Ms. Dawson, Mutual of Frederick for $\frac{4}{7}$, and Mutual of Virginia for $\frac{2}{7}$.

[2] In pertinent part, § 38.1-381(a) reads as follows:

"No policy or contract of bodily injury liability insurance . . . covering liability arising from the ownership, maintenance or use of any . . . boat or other watercraft, shall be issued or delivered in this State to the owner of such . . . watercraft, or shall be issued or delivered by any insurer licensed in this State upon any . . . boat or other watercraft then principally . . . docked or principally used in this State, unless it contains a provision insuring the named insured and any other person responsible for the use of or using the . . . boat or other watercraft with the consent, expressed or implied, of the named insured, against liability for death or injury sustained, or loss or damage occasioned within the coverage of the policy or contract as a result of negligence in the operation or use of such . . . watercraft by the named insured or by any such person . . . ."

[3] § 38.1-381(a2) reads as follows:

"Any endorsement, provision or rider attached to, or included in, any such policy of insurance which purports or seeks in any way to limit or reduce in any respect the coverage afforded by the provisions required therein by this section shall be wholly void."

excess insurance clause is invalid, the Mutual of Virginia policy provides primary coverage, and State Capital is not liable for any portion of the $30,000 settlement.

Responding, Mutual of Virginia argues: Its policy, as the others involved in this case, provided only personal liability insurance, rather than special coverage on the specific boat in question. The sole function of the watercraft endorsement was "to waive the exclusion in the Mutual of Virginia policy and make the motor a 'declared' motor rather than an 'undeclared' motor, so that the Personal Liability coverage of the policy would apply to persons operating the same." Thus, the policy was not subject to the requirements of § 38.1-381(a), the excess insurance clause is not invalid under § 38.1-381(a2), and Mutual of Virginia is not primarily liable for the loss in question.

■ From the foregoing arguments, it is apparent that the threshold, and pivotal, issue is the effect of Mutual of Virginia's watercraft endorsement; State Capital can sustain its position only if the endorsement had the effect of converting Mutual of Virginia's policy from a contract of general liability insurance into one specially insuring the specific boat in question. Implicit in State Capital's position is the concession that, if Mutual of Virginia's policy did not specially insure the specific boat in question, then the policy was not subject to the requirements of § 38.1-381(a) and its excess insurance clause is not invalid under § 38.1-381(a2).

We disagree with State Capital's interpretation of the watercraft endorsement. Instead, we agree with Mutual of Virginia that the effect of the endorsement was merely to waive the exclusion relating to an oversized outboard motor and to make the liability coverage of the Mutual of Virginia policy applicable to the use of the larger motor involved in this case.

With this interpretation of Mutual of Virginia's watercraft endorsement, and given the concession implicit in State Capital's argument, we exclude from further consideration the requirements of § 38.1-381(a) and the possible effect of § 38.1-381(a2). Thus, the two policies involved in this appeal are placed upon equal footing with respect to the loss in question.

■ Under their general liability provisions, both policies admittedly are applicable to the loss. But, by use of an excess insurance clause, each policy attempts to limit the protection

otherwise afforded with respect to liability for watercraft accidents. The two clauses are of identical effect in providing that the watercraft coverage shall not apply to the extent other valid and collectible insurance is available to the insured. Given full force and effect, the two clauses operate mutually to reduce or eliminate the amount of valid and otherwise collectible insurance available to the insured from both policies.

The two excess insurance clauses, therefore, are in irreconcilable conflict with one another. In this situation, both must be disregarded, with the result that neither policy provides primary coverage for the loss in question. *State Farm Fire & Casualty Co.* v. *Holton*, 131 Ga.App. 247, 248, 205 S.E.2d 872, 874 (1974).

Also implicit in State Capital's position is the concession that, if the Mutual of Virginia policy did not provide primary coverage for the loss involved in this case, then the pro rata distribution ordered by the trial court was appropriate. Accordingly, because we find no error in the trial court's ruling that Mutual of Virginia was not primarily liable for the loss, we affirm the judgment of the trial court.

*Affirmed.*