CITY OF VIRGINIA BEACH, Plaintiff,

v.

AETNA CASUALTY AND SURETY COMPANY, Defendant.

Civ. A. No. 76–192–N.

United States District Court,
E. D. Virginia,
Norfolk Division.

Dec. 22, 1976.

Harry E. McCoy, Seawell, McCoy, Dalton,
Hughes, Gore & Timms, Norfolk, Va., Jay

A. Richardson, Asst. City Atty., Virginia Beach, Va., for plaintiff.

Jack E. Greer, Williams, Worrell, Kelly & Greer, Norfolk, Va., for defendant.

## MEMORANDUM OPINION AND ORDER

CLARKE, District Judge.

This action was brought by the City of Virginia Beach, Virginia, seeking indemnification from its insurance carrier, the Aetna Casualty and Surety Company, for losses incurred by the City as a result of a judgment rendered against it in favor of owners of property abutting a waterway project in which the City was involved with the Federal Government. The parties will be referred to as City and Aetna and the property owners' action will be referred to as the *Gorman* suit. The City also seeks to recover its attorney's fees and costs expended in defending the property owners' action and attorney's fees arising in the prosecution of this action.

This Court has jurisdiction by virtue of diversity of citizenship of the parties (28 U.S.C. § 1332).

The parties agreed that the Court should make its findings of fact and conclusions of law from exhibits filed by the parties. The Court heard oral argument and has reviewed the briefs of the parties.

## I

### The Policy

Aetna issued to the City new policies each year for the period in question, 1965 through 1975. The "Exclusions" in the various policies differed from time to time as will be discussed later but the substance of the "Insuring Agreements" remained the same in all the policies.

"Insuring Agreements" provided, in part, in the 1965 policy:

"Property Damage Liability—Except Automobile

"To pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of injury to or destruction of property, including the loss of use thereof, caused by accident."

By endorsement, the term "accident" was defined as follows:

"1. Wherever the word 'accident' appears, such word is amended to read 'occurrence'.

"2. 'Occurrence' means

"(A) An accident, or

"(B) Continuous or repeated exposure to conditions which results, during the policy period, in injury to persons or tangible property which is neither expected nor intended from the standpoint of the insured."

The contract further provided that

"[w]ith respect to such insurance as is afforded by this policy, [Aetna] shall: (a) defend any suit against the insured alleging such injury . . . or destruction and seeking damages on account thereof, even if such suit is groundless, false or fraudulent . . . ."

While the format for Insuring Agreements and for defining "accident" and "occurrence" changed in subsequent policies, there was no substantive change.

## II

### Factual Background

In February, 1965 the City adopted a resolution assuring the United States Army Corps of Engineers of its local cooperation in a Corps project to improve Lynnhaven Inlet on the Chesapeake Bay and its connecting inland waters. The project was designed and engineered entirely by the Corps. The purpose of the project was to remove pollution and to increase water quality in Broad and Linkhorn Bays, to provide for recreational facilities and better navigation and to improve shellfish production. One of the main endeavors was the dredging of Long Creek Channel and Long Creek Canal, bodies of water which connected the Lynnhaven River and Lynnhaven Inlet with Broad and Linkhorn Bays, to increase the tidal flow between Linkhorn and Broad Bays and Chesapeake Bay

through Lynnhaven Inlet. The purpose of the increase of tidal flow was to improve water quality in Linkhorn and Broad Bays by a "flushing" action. City agreed to provide all lands, easements, and rights of way required for construction and subsequent maintenance of the improvements, including necessary retaining dikes, bulkheads and embankments or the cost of such retaining works. It implemented this assurance by obtaining an easement, dated March 29, 1965, from landowners abutting the Long Creek Canal to enter upon and remove any part of their tracts of land for the purpose of deepening, enlarging, and maintaining the canal channel. As a part of the consideration for the easement, City obligated itself to maintain, repair or reconstruct bulkheading located on the property as needed or necessary from the deepening, enlargement or maintenance of the canal channel. City transferred its rights under the easement to enter upon and remove any part of the land for the purpose of dredging and maintaining the canal to the United States but retained its obligations to the landowners to maintain, repair, or reconstruct the bulkheading.

Dredging began in late 1965. In February and March, 1966, the City, pursuant to its obligation under the easement, repaired bulkheading damaged as a result of dredging. It appears from the record that the original and subsequent maintenance dredging of 1968, 1970, and 1972 created a strong tidal current which unexpectedly scoured the bottom and sides of Long Creek Canal causing extensive deterioration of the timber bulkheads and erosion of the land which was to be protected by the bulkhead. The City subsequent to 1966 failed to repair or maintain the bulkheading as it deteriorated.

In April 1975, landowners privy to the easement given to the City recovered a judgment (in the Gorman litigation) against the City in the Circuit Court of the City of Virginia Beach for damages sustained by the bulkheads and resulting land erosion, the state court having held that the City was obligated under the easement agreement to maintain the bulkheads from 1965 in perpetuity.

City had promptly notified Aetna of the pending Gorman suit against it and requested that Aetna defend City from liability as provided in its insurance contract. Aetna refused on the grounds that any liability City might be charged with in the litigation was not covered under the insurance contract. City now sues Aetna for the costs expended in the defense of the Gorman litigation, the amount of the judgment awarded to the Gorman litigants and the attorney's fees expended in this suit.

### III

### Was the loss covered under the policy provisions?

As stated above, in all its policies issued to the City during the period in question, Aetna contracted subject to exclusions set forth in the policies to insure City against property damage resulting from an "accident" or "occurrence." The policy defined "occurrence" as a continuous or repeated exposure to conditions resulting in unexpected or unintended injury *from the standpoint of the insured.* (Emphasis added) Aetna argues that the term "occurrence" gives no protection against City's liability for bulkheading and land erosion damages because City manifested its expectation that such damage would occur by accepting the easement obligation to repair and maintain bulkheading damaged as a result of dredging. City counters that it intended by the easement obligation to repair bulkheading damaged by the actual dredging only and not by subsequent events proximately caused by the dredging. City concludes that bottom and side scouring currents which developed as a result of the dredging and which damaged the bulkheading and eroded the land were wholly unexpected by the engineers of the project and thus by the City as evidenced by the testimony of C. J. Robin (Supervisor of development and design for the Corps project) in the Gorman litigation. Thus, claims City, the damage caused by the unexpected scouring current falls within the policy language "injury to

...gible property which is neither expected nor intended *from the standpoint of the insured.*" (Emphasis added)

This Court notes that the State Court in the *Gorman* litigation excluded parol evidence of City's intent with regard to its easement obligation that it only meant to repair damages done to the bulkheads during the dredging operation because the offered evidence conflicted with the clear meaning of the written easement provision. This Court is also of the opinion that the easement provision clearly obligates City to provide *any* maintenance or repair made necessary by the dredging, including subsequent events proximately caused by the dredging. However, we do agree with City that from its standpoint it had not expected nor intended the scouring currents which damaged the bulkheads and eroded the land, and that, therefore, the injuries for which City was held liable in the *Gorman* litigation did fall within the definition of "occurrence" in the policy. We note Aetna's objection that experts in the field testified in the *Gorman* case that the scouring current should have been expected nonetheless the policy provided that the injury be *unexpected from the insured's standpoint.*

The Court concludes that the judgment secured against the City in the *Gorman* litigation falls within the definition of "occurrence" contained in all of the policies issued from 1965 to 1975.

This is not the end of the problem, however, because of varying exclusions within the various policies issued during the 1965 to 1975 period. For convenience, we will consider the policies in three chronologically ordered groups (Group A: 1965 and 1966; Group B: 1967 through 1974; Group C: 1975).

Aetna charges that there are three exclusions in the policies of Group A which defeat coverage to the City. These include exclusions of:

"(G) . . . any obligation for which the insured may be held liable in an action on a contract or an agreement by a person not a party thereto";

"(J) . . . injury to or destruction of . . . property in the care, custody or control of the insured or property as to which the insured for any purpose is exercising physical control . . .."; and

"(L) . . . injury to or destruction of any property arising out of . . . (2) the collapse of or structural injury to any building or structure due to (a) grading of land, excavation, borrowing, filling, back-filling, tunneling, piledriving, cofferdam work or caisson work, or (b) to moving, shoring, under-pinning, razing or demolition of any building or structure or removal or rebuilding of any structural support thereof."

The Court is of the opinion that neither exclusion (G) nor (L) are applicable in this case for the following reasons.

Aetna's position is that in order for exclusion (G) to be applicable the holder of the judgment for which City seeks indemnification must not be a party to the easement agreement. The record shows that while the City entered into the easement agreement with the original landowner, Mr. Gorman, that thereafter Mr. Gorman transferred various parcels to others who were in fact plaintiffs in the state court action against the City. A review of the State Court's instructions to the jury indicate clearly that it concluded that the easement was a covenant running with the land and was, therefore, an agreement with the subsequent owners. This Court agrees with that conclusion of the State Court. Therefore, the landowners who hold judgments against the City are parties to the easement agreement on which City's liability was based and a claim based on their judgment is not subject to exclusion (G).

Exclusion (L) provides that coverage is excluded for damages resulting from collapse of or structural injury to a structure due to sixteen specifically enumerated types of construction work. It appears from the record in this case that structural injury sustained by the bulkheads and for which City was held liable in the *Gorman* suit arose as a result of dredging. Dredg-

ing was not a type of construction work enumerated on the exclusion (L) list. Noting that exclusionary clauses are to be strictly construed against the insurer, *United Service Automobile Association v. Pinkard*, 356 F.2d 35, 37 (4th Cir. 1966), the Court concludes that exclusion (L) is not applicable to exclude City's liability for damaged bulkheading in this case.

■ This Court is of the opinion, however, that exclusion (J) is applicable for the reason that the City had a duty to exercise care, custody and physical control over the bulkheading pursuant to its obligations to maintain, repair or reconstruct the bulkheading under the easement agreement. This control was not affected by the transfer of the easement to the United States as claimed by City because City specifically retained its obligations regarding the bulkheads. Therefore, this Court holds that exclusion (J) contained in the Group A policies excluded coverage for liability for damages, if any, to the bulkheads during 1965 and 1966. This exclusion did not defeat coverage for liability due to land erosion during the same period because the land was not under the care, custody or control of the City. Thus, Aetna is liable to the City for that part of the *Gorman* judgment which represents damages for land erosion occurring during 1965 and 1966, if any.

The insurance policies in Group B (1967–1974) contained an exclusion crucially different from those in the Group A policies. The exclusion was added to each of the policies in the form of an endorsement labeled T–379, which provided:

"It is agreed that the insurance does not apply to bodily injury or property damage arising out of any professional services performed *by or for* the named insured, including

"(1) the preparation or approval of maps, plans, opinions, reports, surveys, designs or specifications and

"(2) supervisory, inspection or engineering services."

(emphasis added)

■ The Court is of the opinion and finds as a fact that the preparation of plans, designs and specifications and engineering and supervision rendered by the United States Army Corps of Engineers in the Lynnhave Inlet, Chesapeake Bay and connecting waters project were professional services performed for City (as well as for itself) because City stood to benefit from the resultant increased water depth which facilitated recreational boating and marina development, better navigation, and improved shellfish production and higher water quality. Further, the services were performed on City land and pursuant to easements obtained by the City. The Court is also of the opinion and finds as a fact that the bulkheading deterioration and land erosion which constituted the basis of damages awarded in the *Gorman* suit arose out of these services performed by the Corps for the City. Therefore, this Court holds that City's liability for bulkheading damage and land erosion under the *Gorman* judgment is excluded from coverage for the years 1967 through 1974 due to endorsement T–379.

The Group C (1975) policy omitted endorsement T–379. However, it retained the exclusion for damages to property in the care, custody and control of the insured discussed heretofore in respect to Group A policies. Thus, the 1975 policy like the policies for 1965 and 1966 excludes from coverage City's liability under the *Gorman* judgment for bulkheading damages, but covers the damages assessed for land erosion, if any, from January 1, 1975, up to the time of judgment in April 1975.

In sum, Aetna is liable to the City under its insurance contracts of 1965 through 1975 for that part of the *Gorman* judgment which represents damages for land erosion occurring during 1965, 1966 and January to April, 1975. The Court is of the opinion that an evidentiary hearing is needed to ascertain the monetary value of these damages.

### III

*Aetna's Liability for Cost of Defense*

■ The Court now focuses its attention on the issue of plaintiff's recovery of

amounts it spent for its defense in the *Gorman* litigation. As stated heretofore, Aetna contracted under the 1965–1975 insurance policies to defend City in any suit seeking damages for injuries covered by the policies, and to pay all expenses and court costs incident thereto, even if such suit might be groundless, false or fraudulent. We agree with Aetna that it has no liability to City for City's costs in the *Gorman* litigation unless the claims in the *Gorman* suit created liability within the coverage of the policy. *Midland Constr. Co., Inc. v. United States Cas. Co.*, 214 F.2d 665 (10th Cir. 1954). However, whether the *Gorman* litigation fell within policy coverage is determined from the allegations in the Complaint and "if those allegations leave in doubt whether the case alleged is covered by the policy, the refusal of the insurance company to defend is at its own risk; and if it turns out on development of the facts that the case is covered by the policy, the insurance company is necessarily liable for breach of its covenant to defend." *London Guarantee & Accident Co. v. C. B. White & Bros., Inc.*, 188 Va. 195, 49 S.E.2d 254, 256 (1948). See also *Baker v. American Insurance Co. of Newark, New Jersey*, 324 F.2d 748 (4th Cir. 1963). Further, once a complaint states one claim within the policy's coverage, the insurer has a duty to accept defense of the entire lawsuit even though other claims in the complaint fall outside the policy's coverage. *United States Steel Corp. v. Hartford Accident & Indem. Co.*, 511 F.2d 96, 99 (7th Cir. 1975); *Babcock & Wilcox Co. v. Parsons Corp.*, 430 F.2d 531, 537 (8th Cir. 1970).

■ The allegations in the *Gorman* suit specified that City had breached its duties under the easement to maintain, repair and reconstruct bulkheading situated on complainants' property as needed or necessary resulting from dredging the channel, thereby causing the complainants to suffer deteriorated bulkheads and property erosion. It has now been determined that the 1965–1975 policies gave partial coverage for *Gorman* damages apportioned to land erosion. Therefore, on the basis of authority cited above, Aetna is liable to City for its total

costs expended in the defense of the *Gorman* litigation.

The Court finds that the City's costs in defending the *Gorman* action amounted to $37,863.56, which amount the Court finds to be reasonable and at an appropriate time such amount will be included in a judgment to be entered in favor of the plaintiff.

## IV

### Costs of Prosecuting this Action

The final issue to be considered is whether City may recover attorney's fees expended in *this* action against Aetna for breach of its contract to defend and indemnify City in the *Gorman* action.

■ Ordinarily, attorney's fees should not be allowed in a breach of contract case unless specifically contracted for or fixed by statute. *Wallace Process Piping Co. v. Martin-Marietta Corp.*, 251 F.Supp. 411, 420 (E.D.Va.1965). "In an ordinary diversity case . . . state law denying the right to attorney's fees or giving a right thereto . . . should be followed." *Sperry Rand Corporation v. A–T–O, Inc.*, 447 F.2d 1387, 1394 (4th Cir. 1971). Virginia law is applicable in this diversity case and it provides as follows:

"It is well settled that as a general rule, in the absence of any contractual or statutory liability therefor, attorneys' fees and expenses incurred by the plaintiff in the litigation of his claim against the defendant, aside from the usual taxed court costs, are not recoverable as an item of damages in actions *ex contractu*. Nor are attorneys' fees and other expenses incurred in former litigation between the same parties recoverable in a subsequent action." *Hiss v. Friedberg*, 201 Va. 572, 112 S.E.2d 871, 875 (1960).

Since there is no evidence that Aetna contracted to pay attorneys' fees in a breach of contract action against it, and Virginia law does not provide for attorneys' fees in such action, this Court denies City's claim for attorneys' fees in this action.

The docket clerk is directed to arrange an evidentiary hearing on the issue of damages as provided for herein.