GOVERNMENT EMPLOYEES INSURANCE COMPANY

V.

UNIVERSAL UNDERWRITERS INSURANCE COMPANY

Record No. 840058

November 26, 1986

Present: All the Justices

*J. A. Coyle (James, Richardson & Quinn*, on briefs), for appellant.

*L. S. Parsons (Parsons, Berry, Coureas & Steffen*, on brief), for appellee.

POFF, J., delivered the opinion of the Court.

We granted this appeal to determine which of two automobile insurance companies had primary uninsured motorist (UM) coverage of a bodily-injury loss allegedly resulting from the negligence of an unknown motorist. The central question, one of first impression in this Court, requires an analysis of an "other insurance" escape clause in a garage liability policy and an "excess insurance" escape clause in a second policy extending UM coverage to the permissive driver of the garage keeper's automobile.

Universal Underwriters Insurance Company (Universal) filed an action asking the trial court to declare that Government Employees Insurance Company (GEICO) had primary coverage over bodily-injury losses sustained by Shirley A. Stewart when an unknown motorist struck the rear of the car she was driving. She was driving that car with the consent of Coliseum Lincoln Mercury while her own car was being repaired. Universal had issued Coliseum a garage liability policy. Stewart was an insured under a policy issued by GEICO to her husband.

Both policies furnish UM coverage. Universal's Optional Endorsement No. 15 provides that a garage customer is not an insured "[i]f there is other valid and collectible Insurance whether primary, excess or contingent, available to the GARAGE CUSTOMER and the limits of such insurance are sufficient to pay damages . . . up to the amount of the APPLICABLE FINANCIAL RESPONSIBILITY LIMIT" and if "the limits of such insurance are insufficient . . . this insurance shall apply to the excess of damages . . . up to such limit." Part IV of GEICO's policy furnishes an insured occupant of a vehicle not owned by the named insured only "excess insurance over any other similar insurance available to such insured and applicable to such vehicle as primary insurance."

In a final order entered October 13, 1983, the trial court ruled that former Code § 38.1-381(a3) (now § 38.2-2205(A)(1)) was

intended "to give certain relief under a garage liability policy to benefit a business man . . . when one of his vehicles is being used as a convenience to a consumer while the consumer's car is being repaired." Considering this subsection of the statute "coupled with a policy option Endorsement 15 in the plaintiff's insurance policy", the court declared that GEICO had "the responsibility . . . to afford primary coverage . . . and that the coverage of the plaintiff . . . is secondary."

The first question we consider is whether, as Universal maintains, the language of subsection (a3) of former Code § 38.1-381, defining an exception to coverage afforded a permissive user under a garage liability policy, applies to UM coverage. Challenging the trial court's conclusion, GEICO contends that it does not.

In pertinent part, subsection (a) of the statute, commonly called the "omnibus clause", provides:

> No policy . . . of bodily injury liability insurance, or of property damage liability insurance, covering liability arising from the . . . use of any motor vehicle . . . shall be issued . . . unless it contains a provision insuring the named insured and any other person . . . using the motor vehicle . . . with the consent . . . of the named insured, against liability for . . . injury sustained, or loss or damage occasioned . . . as a result of negligence in the operation or use of such vehicle . . . by the named insured or by any such person . . . .

Subsection (a3), a restrictive modifier of the subsection of which it is a part, creates an exception to the omnibus clause. It provides that when "[s]uch policy", *i.e.*, the policy referred to in subsection (a), is issued to a garage keeper who leases its cars for more than six months, or permits prospective purchasers to test-drive its cars, or loans its cars as a convenience to customers awaiting service or repairs, the policy

> shall not be applicable if there is any other valid and collectible insurance applicable to the same loss covering [a permissive user] under a policy with limits at least equal to the financial responsibility requirements specified in § 46.1-504 of the Code of Virginia.

In explicit terms, subsection (a), the omnibus clause, applies exclusively to liability coverage. Liability coverage and UM cover-

age afford different types of protection. Liability coverage protects an insured from liability incurred on account of his own negligence; UM coverage protects an insured against damages sustained as the result of the negligence of an uninsured motorist. When tort litigation ensues, the liability insurer is the insured's defender; the UM insurer is the insured's adversary. Subsection (a3) restricts the impact of the omnibus clause so that the protection otherwise furnished a permissive driver under the liability coverage of a garage liability policy does not apply. That subsection does not mention UM coverage.

█ Subsection (b) of § 38.1-381 requires that every insurance policy "relating to ownership, maintenance or use of a motor vehicle" provide UM coverage. That subsection expressly permits an exception for "umbrella" policies defined in subsection (j) as those "which have as their primary purpose to provide coverage in excess of other valid and collectible insurance". Had the General Assembly intended to create an exception to the UM mandate for the benefit of a garage keeper and its insurer, it could have done so in language such as that employed in subsections (j) and (a3). It did not do so. We do not assume that the omission was inadvertent. Rather, we conclude that the legislature was consciously and deliberately selective.

█ While we agree with GEICO that subsection (a3) is irrelevant to the issue before us, we agree with the trial court that Universal's coverage was secondary. What is involved here is a loss which implicates the UM coverage provisions of two insurance policies. Both policies are contracts. Shirley A. Stewart is entitled to primary protection under one or the other, and we must construe the terms of the contracts to determine which.

As a permissive driver, Stewart is an insured under Universal's garage policy. As the driver of a non-owned vehicle, she is an insured under GEICO's policy. Both policies provide UM protection. But each includes an escape clause. Universal's policy contains what is commonly called an "other insurance" escape clause.* GEICO's policy contains an "excess insurance" escape

---

* As counsel for GEICO interprets paragraph F of the UM endorsement attached to Universal's policy, that endorsement replaces Optional Endorsement No. 15. In oral argument at the bar of this Court, he contended for the first time that, given such interpretation, Universal's escape clause does not apply to UM coverage. Because the record fails to show that the contention he makes was raised for consideration by the trial court, we will not notice the question on appeal.

clause. Two questions occur: (1) Does the existence of the GEICO policy trigger the escape clause in Universal's policy? (2) Does the existence of the Universal policy trigger the escape clause in GEICO's policy?

Our review of cases involving escape-clause conflicts in policies providing liability coverage shows that the courts have applied familiar principles of contract construction to determine which policy afforded primary coverage. While those courts have reached widely divergent conclusions and UM coverage was not in issue, we find a comparison of the analyses helpful.

Some courts have concluded that escape-clause conflicts in liability policies are mutually repugnant, that any effort to resolve the conflict by judicial construction involves circular reasoning, that both insurers are primary insurers, and that liability should be prorated according to the policy limits in the respective policies. *See, e.g., Lincombe* v. *State Farm Mutual Automobile Ins. Co.*, 166 So. 2d 920 (La. App.), *cert. denied*, 246 La. 907, 168 So. 2d 820 (1964); *State Farm Mutual Auto. Ins. Co.* v. *Travelers Ins. Co.*, 184 So. 2d 750 (La. App.), *cert. denied*, 249 La. 454, 187 So. 2d 439 (1966) (sequel to *Lincombe*).

Other courts have held that a liability policy containing an "excess insurance" clause cannot reasonably be construed to provide other *collectible* insurance within the meaning of an "other insurance" escape clause in another policy and, hence, that the latter owes primary coverage. *See, e.g., Zurich General Accident & Liability Ins. Co.* v. *Clamor*, 124 F.2d 717 (7th Cir. 1941).

We find similar disparity in the decisions resolving escape-clause conflicts in policies providing UM coverage. *See generally*, Annot., *Uninsured Motorist Insurance: Validity and Construction of "Other Insurance" Provisions*, 28 A.L.R.3d 551, § 6 at 566 (1969). Aside from the type of coverage involved, the case before us is much like one reviewed by the Supreme Court of North Carolina. In *Allstate Insurance Co.* v. *Shelby Mutual Ins. Co.*, 269 N.C. 341, 152 S.E.2d 436 (1967), the Court was required to decide which of two liability policies containing escape clauses provided primary coverage. There, a car owned by a car dealership and operated with its consent by a prospective purchaser struck and injured a minor child. The permissive driver was an insured under a garage liability policy issued to the dealership by Shelby Mutual and, at the same time, an insured under another policy issued by Allstate. Shelby Mutual's policy contained an "other in-

surance" escape clause. The Allstate policy contained an "excess insurance" clause applicable to the driver. Pending trial of the tort actions brought by the child's father, Allstate instituted a suit for declaratory judgment.

On appeal by both insurers, the Court reviewed and rejected the reasoning in *Lincombe* and distinguished the decision in *Zurich*. The distinction was based on language differences in the respective "other insurance" escape clauses. In Zurich, the language was "other valid and collectible automobile liability insurance"; in the North Carolina case, the language in Shelby Mutual's policy was "other valid and collectible automobile insurance, *either primary or excess*". *Id.* at 344, 152 S.E.2d at 439 (emphasis in original). The Supreme Court of North Carolina ruled that Shelby Mutual had no duty to defend any tort action against its insureds or to pay any damages awarded the plaintiffs. Distinguishing *Zurich*, the Court reasoned as follows:

> Here, the Shelby Mutual policy is not ambiguous with reference to the intent of the parties to exclude coverage under it where the other policy contains an "excess" clause. The Shelby Mutual policy expressly makes the existence of such "excess" policy an event which sets the Shelby Mutual's exclusionary clause into operation.

*Id.* at 351, 152 S.E.2d at 443. *See also Continental Cas. Co.* v. *Weekes*, 74 So. 2d 367 (Fla. 1954). *But see Graves* v. *Traders & General Insurance Company*, 200 So. 2d 67 (La. App. 1967).

We adopt the logic of this reasoning and apply it here. Universal's Optional Endorsement No. 15 expressly excludes coverage of a garage customer whenever he is insured by other valid and collectible insurance "whether primary, excess or contingent". Because the insurance available to Stewart under GEICO's policy is excess insurance, we hold that its existence is an event which triggers Universal's escape clause. The trial court held that GEICO has primary coverage, and we will affirm the judgment.

*Affirmed.*