AETNA CASUALTY & SURETY COMPANY

V.

NATIONAL UNION FIRE INSURANCE COMPANY, ETC., ET AL.

Record No. 831567

March 6, 1987

Present: All the Justices

T. Jeffrey Salb (Breeden, MacMillan & Greene, on briefs), for appellant.

Charles E. Payne (John W. McCormick; Boyd, Payne, Gates & Farthing, P.C., on brief), for appellees.

POFF, J., delivered the opinion of the Court.

This is an appeal from a judgment deciding a dispute between two insurance companies concerning liability for losses sustained in an accident involving a tractor-trailer truck. The judgment was based upon the pleadings, a stipulation of facts, the exhibits admitted at trial, and argument by counsel.

The tractor was owned by Ryder Truck Rental, Inc. (Ryder). Ryder leased the tractor to Eppinger & Russell Co. (Eppinger) for a term of 13 months. The accident occurred while Eppinger's trailer was attached to Ryder's tractor. Ryder was insured by National Union Fire Insurance Company of Pittsburgh, Pennsylvania (National), under a liability policy which limited coverage applicable to this accident to $500,000. Eppinger was insured by Aetna

Casualty & Surety Co. (Aetna) under a liability policy which limited coverage to $1,000,000 for each occurrence. Aetna's coverage extended to Ryder's tractor as a "non-owned vehicle".

National and Aetna agreed that Eppinger and its employee, the driver of the tractor-trailer, "were probably legally liable" for the losses sustained in the accident. Negotiations between National and counsel for the claimants resulted in a compromise settlement in the sum of $18,926.84. Because National's policy contained a deductible clause in excess of that sum, Ryder made the payment.

National filed a motion for judgment against Aetna, seeking total indemnity for its insured or, in the alternative, contribution of a pro rata share of the payment made to settle the claims. Aetna denied liability, and the trial court granted its motion to join Ryder as a party-plaintiff.

In a counterclaim, Aetna alleged that Ryder "agreed to afford to . . . Eppinger . . . liability insurance in the sum of $500,000.00 . . . at its sole cost, covering both Ryder and [Eppinger]"; that Aetna "is a third-party beneficiary of the terms of this contract"; that if the court should find that Ryder's policy with National did not provide primary coverage, then Ryder "has breached the terms of its contract"; and that "Eppinger . . . and [Aetna] as a third-party beneficiary, are entitled to indemnity".

In its order entering final judgment, the trial court held that Aetna should "take nothing by its Counterclaim against Ryder". In a letter opinion incorporated by reference in that order, the trial court ruled "that the 'other insurance' clauses of the two policies are mutually repugnant, compounded by the provisions of the lease and those of [Code] § 38.1-381(a3)." Accordingly, the court found "that plaintiffs are entitled to contribution from Aetna . . . for two-thirds (⅔) of the sums paid by the plaintiff in [the] settlement" and awarded National and Ryder judgment in the sum of $12,612.88. Aetna assigned multiple errors, and we granted this appeal.[1]

Although Aetna assigned no error to the trial court's ruling on its counterclaim, Aetna, apparently relying on the allegations in

---

[1] In an assignment of cross-error, National complained that "[t]he trial court erred in granting appellees pro rata contribution from Aetna rather than indemnification", and we extended the scope of the appeal to include National's assignment. However, National chose not to address that assignment on brief or in oral argument and asks us to affirm the judgment awarding it contribution. Hence, National has endorsed the court's rationale in its letter opinion and waived its indemnification claim.

that pleading, argues that National and Ryder were estopped to invoke the provisions of former Code § 38.1-381(a3) (hereinafter, (a3)).[2] Aetna reasons that, although the lease contract required that the policy issued to Ryder provide primary coverage, it also required Eppinger to indemnify Ryder against any liability incurred in excess of the limits of Ryder's policy. "The language of the lease," Aetna contends, "virtually compelled Eppinger . . . to purchase excess . . . insurance". Aetna concludes that Eppinger was induced to believe that if it did so, Ryder would waive its right to invoke the (a3) exception. Further, Aetna says that the premiums on Ryder's policy were included in the rental fees, and that if Ryder acted with knowledge that the statute would have the effect National claims, "Ryder has breached . . . its contract . . . to provide *primary* . . . insurance". In either case, Aetna charges, the plaintiffs are estopped to rely on the statutory exception.

■ We find nothing of record to show that Aetna relied to its detriment upon the actions of Ryder when Aetna issued its policy to Eppinger. Aetna had no contract with Ryder or with National, and Aetna, although perhaps an incidental beneficiary, was not a third-party beneficiary under the contract between Ryder and Eppinger. *See Valley Company* v. *Rolland*, 218 Va. 257, 237 S.E.2d 120 (1977). If any party relied to its detriment on the actions of Ryder, it was Eppinger. But Eppinger was not a party-litigant, and we hold that Aetna has no standing to invoke the doctrine of estoppel.

Aetna maintains that the trial court erred by invoking the provisions of (a3). National did not include the statutory language in its policy, and Aetna argues that "(a3) at most permits the inclusion" of that clause in a liability policy issued to a long-term lessor.

■ We disagree. The statute is couched in mandatory terms. Originally, (a3) provided that a garage-keeper's policy "may con-

---

[2] Former Code § 38.1-381(a3) (now, Code § 38.2-2205(A)(1)), a restrictive modifier of subsection (a), commonly called the "omnibus clause", creates an exception to that clause. Insofar as relevant here, (a3) provides that every motor vehicle liability insurance policy issued to a "named insured" who leases vehicles for a period of six months or more

shall contain a provision that the insurance coverage . . . afforded a person other than the named insured . . . shall not be applicable if there is any other valid and collectible insurance applicable to the same loss covering [a permissive user] under a policy with limits at least equal to the financial responsibility requirements specified in § 46.1-504 of the Code of Virginia.

tain" the exception. Acts 1968, c. 199. Two years later, the word "shall" was substituted for the word "may", Acts 1970, c. 494, and in 1977, the General Assembly amended (a3) to make it applicable to policies issued to long-term lessors, Acts 1977, c. 78. Such statutory provisions are "as much a part of the policy as if incorporated therein." *State Farm Mutual* v. *Duncan*, 203 Va. 440, 443, 125 S.E.2d 154, 157 (1962).

Pursuing its argument that (a3) is inapplicable, Aetna points out that it "only applies when the driver/tort feasor is one 'other than the named insured'." Endorsement No. 13 appended to National's policy states that "the coverage provided by this policy, includes as additional insureds any person or organization for whom the named insured is obligated by written agreement to provide liability insurance". Aetna argues that "Eppinger . . . *is* a named insured by virtue of endorsement # 13".

■ But the very language of the endorsement recognizes a distinction between the named insured and others protected by the policy. National's policy defines the named insured as "the person or organization named in Item 1 of the declarations of this policy", the parties have expressly stipulated that "Ryder . . . was a named insured", (a3) clearly treats a lessee as "a person other than the named insured", and we reject Aetna's construction of Endorsement No. 13.

Aetna's chief complaint is that the trial court, relying upon decisions in other jurisdictions, adopted and applied the rule that coverage should be prorated according to policy limits when "other insurance" clauses are conflicting and mutually repugnant. Citing other foreign authority, Aetna contends there was no conflict here because "the Aetna policy, in providing only excess insurance, did not afford insurance which was 'valid and collectible' as contemplated by the statute". "If a conflict exists at all," Aetna says, "it arises solely by reason of the statutory construction".

■ As appears from the letter opinion, however, the trial court did not base its decision on a finding that the conflict arose solely by reason of the statute. Rather, the court concluded "that the 'other insurance' clauses of the two policies are mutually repugnant, compounded by the provisions of the lease and those of § 38.1-381(a3)." Thus, the trial court's finding was that (a3) merely contributed to the conflict. Although the lease contract assigned "Liability Insurance Responsibility" to "Ryder" to obtain a policy of primary insurance, the trial court apparently construed

the statute to import into National's policy a provision that made its coverage merely excess. It is immaterial whether that construction was correct, for Endorsement No. 2 in National's policy provided that "with respect to any automobile . . . which is leased/rented . . . under an agreement whereby the lessee/rentee agrees to provide . . . liability insurance . . . the insurance under this policy shall be excess insurance". Eppinger's policy with Aetna also provided excess insurance, and Eppinger agreed in the lease contract "to release, indemnify, and hold Ryder harmless from and against any claims . . . in excess of the limits of Liability Insurance, whether provided by Ryder or [Eppinger]".

■ We agree with the trial court that, read together, the provisions of the statute, the two policies, and the lease contract are virtually identical in effect, irreconcilable, and mutually repugnant. In such case, we need not choose among the precedents in other jurisdictions.

■ We have recently held that when "other insurance" clauses of two policies are of identical effect in that they operate mutually to reduce or eliminate the amount of collectible insurance available, neither provides primary coverage and that "the pro rata distribution ordered by the trial court was appropriate." *State Capital Ins.* v. *Mutual Assurance Soc.*, 218 Va. 815, 820, 241 S.E.2d 759, 762 (1978). *Cf. GEICO* v. *Universal Underwriters Ins. Co.*, 232 Va. 326, 350 S.E.2d 612 (1986) ("other insurance" clauses reconcilable). We believe that rule is especially applicable when, as here, two or more policies, in anticipation of possible conflicts in "other insurance" clauses, expressly provide for pro rata coverage.[3]

Applying the rule adopted in *State Capital Ins.* to the facts and circumstances in this case, we will affirm the judgment.

*Affirmed.*

---

[3] National's policy provides that "[w]hen both this insurance and other insurance apply to the loss on the same basis, whether primary, excess or contingent, . . . the company shall not be liable for a greater proportion of such loss than the applicable limit of liability under this policy for such loss bears to the total applicable limit of liability of all valid and collectible insurance against such loss."

Aetna's policy provides that "[w]hen two or more policies cover on the same basis, either excess or primary, we will pay only . . . the proportion that the limit of our policy bears to the total of the limits of all the policies covering on the same basis."