## CIRCUIT COURT OF FAIRFAX COUNTY

American Bankers
Ins. Co. of Florida

v.

Jefferson Pilot Fire
and Casualty Co.

### May 2, 1989

### Case No. (Law) 70241

## By JUDGE F. BRUCE BACH

This subrogation case is before the Court on the parties' cross-motions for summary judgment. American Bankers Insurance Company of Florida seeks to recover from Jefferson Pilot Fire and Casualty Company the sum of $350,000.00 which the plaintiff paid in settlement of two malpractice claims against attorney John Pearsall. The Court has considered the oral arguments heard on March 21, 1989, as well as the memorandum and stipulation of facts presented by counsel.

Earlier cross-motions for summary judgment were heard by Judge Quinlan Hancock on December 17, 1987. By order entered February 3, 1988, Judge Hancock granted partial summary judgment to American Bankers on the grounds

4

that Jefferson Pilot did have a duty to defend Pearsall in the underlying malpractice action. The Court did not make any finding as to the extent of Jefferson Pilot coverage for these claims.

The cross-motions before the Court involve two basic issues:

1. Whether Jefferson Pilot has a duty to provide indemnification or contribution to American Bankers for the two claims American Bankers settled in the malpractice action.

2. If Jefferson Pilot is liable for either of the two claims, what amount is owed by Jefferson Pilot as contribution or indemnification.

I. *Whether Jefferson Pilot Has A Duty to Provide Indemnification or Contribution to American Bankers for the Two Claims American Bankers Settled in the Malpractice Action.*

It has been stipulated that Pearsall's policy with Jefferson Pilot was effective from March 16, 1973, to March 16, 1976, and Pearsall's policy with American Bankers was effective from March 16, 1976, to March 16, 1982.

The American Bankers policy provides for the following coverage:

> 1. Professional Liability and Claims Made Clause: To pay on behalf of the Insured all sums in excess of the Declarations which the Insured shall become legally obligated to pay as damages as a result of *claims first made against the insured during the policy period*; (a) by reason of any act, error, or omission in professional services rendered or that should have been rendered by the Insured . . . *provided always that* such act, error, or omission or such personal injury happens:
> (aa) during the policy period . . . .

The Jefferson Pilot policy defines coverage as follows:

> To pay on behalf of the insured all sums which the insured shall become obligated to pay by reason of the liability imposed upon him by

law for damages resulting from any claim made against the insured arising out of the performance and of professional services for others in the insured's capacity as a lawyer or a notary public and caused by any act, error, or omission of the insured . . . .

The Jefferson Pilot policy also includes the following limitation on coverage:

This policy applies only to acts, errors, or omissions which occur within the United States of America, its territories or possessions, or Canada (a) during the policy period and then only if claim is made or suit is brought within six (6) years after the end of the annual policy period in which the act, error, or omission occurred, or (b) prior to the effective date of the policy and then only if claim is made or suit is brought during the policy period, provided no insured had any knowledge at the effective date of the policy of such prior act, error, or omission.

In order for Jefferson Pilot to provide coverage for the acts by Pearsall, the acts must have occurred during the policy period and the claims must have been made within the specified time period.

The first claim settled was for a defective mechanic's lien. The lien was filed October 2, 1974, and was declared invalid in 1978, and the appeal was denied in May, 1980. The act occurred when the defective lien was filed October 2, 1974, which was within the policy period.

The second claim was a wrongful bifurcation of a contract claim. A bill of complaint for specific performance was filed in early 1975 and was amended on March 31, 1975, to include a claim for monetary damages from one defendant. On October 17, 1975, Pearsall filed an action for breach of contract in Federal Court. On July 19, 1976, the attorney requested an amendment from the Circuit Court claim for specific performance, and on July 26, 1976, an order was entered converting it into a lien determination proceeding. In February, 1980, the final decree was entered, and in

November, 1980, the Supreme Court denied the writ for appeal. On April 20, 1981, the Federal Court found that the federal action was barred by *res judicata*.

The parties disagree as to when this act of malpractice occurred. American Bankers argues that the specific performance claim was one of a series of acts done in Pearsall's continuing representation of the client, so the date of the bifurcation of the contract claim relates back to the first wrongful act, which would be the filing of the mechanic's lien on October 2, 1974. In the alternative, American Bankers argues that the act occurred on October 17, 1974, when the case was filed in Federal Court. Jefferson Pilot argues that the act occurred at the time of the conversion of the claim in July, 1976.

The Court notes that the "continuing representation" rule applies only to the determination of when a cause of action accrues in applying the statute of limitations. This rule has no application to the determination of when an act of malpractice actually occurs. An act of malpractice actually occurs when a client sustains an injury. In this case, Pearsall's client was injured when the specific performance suit was converted into a lien determination suit. This act terminated the client's right to sue for contract damages. This act occurred in July of 1976, when Jefferson Pilot's policy was no longer in effect.

The second condition for coverage under Jefferson Pilot's policy is that a claim must be made within six years after the end of the annual policy period in which the act occurred.

The parties appear to be in agreement on the dates when the claims were made. The claim for the defective mechanic's lien was first filed on August 11, 1981. The claim for the bifurcation of the contract cause of action was made on September 28, 1983.

The parties disagree as to whether the claim for the mechanic's lien was filed within the time period. Jefferson Pilot argues that the claim was made more than six years after the end of the annual policy period in which the act occurred. Jefferson Pilot contends that this limitation on coverage is a valid and permissible contract provision which reflects a specific risk calculated on the basis of the six year limitation on coverage. Fur-

thermore, the provision is clear and the court should not create an ambiguity where there is none.

American Bankers argues that the "annual policy period" should be construed to refer to the three-year policy period. Therefore, the claim was timely filed before March 16, 1982, which was within six years after the end of the three-year period on March 16, 1976. American Bankers further argues that its interpretation should prevail because the contract is ambiguous. Therefore, the contract should be construed against the insured, who drafted the contract. American Bankers also argues that the contract limitation violates public policy.

Applying the general rules of the construction of contracts, the Court finds that the contract is ambiguous because reasonable men could differ as to its interpretation. The declaration page refers to a "three-year policy period" while the limitation provision provides for an "annual policy period." These provisions cannot be reconciled. Upon reading the contract as a whole and applying the usual rules of contract interpretation, the Court finds that the contract is ambiguous. The use of the phrase "annual policy period" creates an ambiguity within the contract because it is inconsistent with the definition of the policy period as three years on the declaration page. It is a well-settled rule in Virginia that:

> [W]here there is a doubt or uncertainty and where the language of a policy is susceptible of two constructions, it is to be construed liberally in favor of the insured and strictly against the insurer. Where two interpretations equally fair may be made, the one which permits a greater indemnity will prevail because indemnity is the ultimate object of insurance. *White Tire Distributors, Inc. v. Pennsylvania Nat. Mutual Casualty Insurance Company*, 235 Va. 439 (1988).

Applying this principle to the case at bar, the Court finds that a claim was made within six years of the end of the policy period, and therefore, the mechanic's lien claim was within the coverage of Jefferson Pilot's policy.

As the Court has previously found that the act of bifurcation of the contract claim was not within the coverage period, it is not necessary to reach the issue of whether the claim was made within the required time.

II. *If Jefferson Pilot Is Liable for Either of the Two Claims, What Amount Is Owed to American Bankers for Contribution or Indemnification?*

As the Court has found that the mechanic's lien claim was within Jefferson Pilot's policy, the Court must now determine the amount of its liability to American Bankers for the settlement of the malpractice claim.

Both contracts contain "other insurance" clauses which specify the extent of their coverage when another insurer's policy covers the same claim.

The American Banker's policy provides coverage for an act, error, or omission that happens:

> (bb) prior to the policy period, provided that prior to the effective date of this policy:
> 1. the Insured did not give Notice to any prior insurer of any such act, error, or omission or personal injury; and
> 2. the Insured had no basis to believe that the Insured had breached a professional duty or committed a personal injury; and
> 3. there is no prior policy or policies which provide for such liability or claim unless the available limits of liability of such prior policy or policies are insufficient to pay any liability or claim in which event this policy will be in excess over any such policy coverage.

The Jefferson Pilot policy provides the following:

> If the insured has other insurance against loss covered by this policy, the company shall not be liable under this policy for a greater portion of such loss than the applicable limit of liability stated in Item 3 of the declarations bears to the total applicable limit of liability

of all valid and collectible insurance against such loss.

Jefferson Pilot argues that the two "other insurance" clauses are mutually repugnant, so the Court should not give effect to either one. Each party should be liable based on the ratio of the amount of their coverage to the total amount of coverage. American Bankers argues that their "excess" insurance does not constitute "other insurance" within the meaning of Jefferson Pilot's policy. Therefore, Jefferson Pilot is the primary insurer and is liable for the full amount.

Several Virginia Supreme Court cases have considered the issue of how to reconcile conflicting "other insurance" clauses. The general approach is to hold that the clauses are "mutually repugnant" because they eliminate or reduce the amount of coverage available to the insured. The court disregarded the clauses, found both insurers to be primary insurers, and made a pro-rata allocation of the liability. *See, e.g., Aetna Casualty and Surety Company v. National Union Fire Insurance Company*, 233 Va. 49 (1987); *State Capital Insurance Company v. The Mutual Assurance Society*, 218 Va. 815 (1978).

No Supreme Court cases have considered the specific conflict at issue here, which is "pro rata" versus "excess." However, this court believes a similar approach would be applied here. This "pro rata" approach allows the court to avoid the circular reasoning necessitated by any attempt to reconcile these provisions. Another advantage to this method is that it serves to spread the risk of loss, which is a primary purpose of insurance.

Applying the "pro rata" rule to the facts here, the Court finds that Jefferson Pilot's coverage is $500,000.00 per claim, and American Bankers' is $1,000,000.00 per claim. The total amount of coverage is $1,500,000.00, and Jefferson Pilot's proportionate share is one-third.

As the court has found Jefferson Pilot liable for only one of the claims, the court must determine what portion of the $350,000.00 total settlement is attributed to each of the two claims. When the court asked the attorneys about this at the hearing, they admitted that the evidence is very limited. The only evidence presented was a letter by Pearsall's defense counsel which estimated

his maximum exposure for the mechanic's lien claim to be $325,000.00. However, it has been this court's experience that insurance companies seldom pay the maximum amount of exposure.

The burden is on American Bankers as the plaintiff to prove its damages. The court needs evidence upon which to make a reasonable estimate of the disparate amounts. American Bankers' adjusters were uniquely in a position to create evidence of this allocation, but they failed to do this. No one else could have decided this or kept a record of it besides American Bankers. There is no logical way for the court to determine, based on the evidence presented, what portion of the settlement was paid for each claim, except to arbitrarily allocate half to each claim. Because American Bankers has not met its burden, summary judgment is granted to Jefferson Pilot.

American Bankers also asks for prejudgment interest on the amount of the judgment. Assuming without deciding that the court could have apportioned the settlement amount and granted judgment to American Bankers, the court would have declined to award prejudgment interest. Although the Court may provide for prejudgment interest pursuant to Virginia Code § 8.01-382, it was not prayed for in the bill of complaint in this case.

American Bankers also asks for $37,559.00 in legal fees for the cost of defending Pearsall in the malpractice action, and the parties have stipulated that this amount is reasonable. The refusal of an insurance company to defend is at its own risk, and if it turns out on development of the facts that the case is covered by the policy, the insurance company is necessarily liable for breach of its covenant to defend. *City of Virginia Beach v. Aetna Casualty and Surety Company*, 426 F. Supp. 821 (E.D. Va. 1976); *London Guarantee & Accident Co. v. C. B. White & Brothers, Inc.*, 188 Va. 195 (1948). The Court is without evidence to apportion the settlement amount between the two claims and has even less evidence upon which to allocate the legal fees. American Bankers has not met its burden of proving damages, and judgment is granted to Jefferson Pilot.

Finally, American Bankers asks for the costs of prosecuting this subrogation action against Jefferson Pilot. Assuming that the Court had been able to apportion

the settlement amount, it would not have granted these costs. Attorneys' fees and expenses incurred by the plaintiff in the litigation of his claim against the defendant are not recoverable as an item of contract damages, unless a specific contractual or statutory provision provides otherwise. *City of Virginia Beach, supra*, at 827. The contract between Pearsall and Jefferson Pilot did not provide for the recovery of fees in a breach of contract act against Jefferson Pilot by Pearsall. Therefore, American Bankers could not have recovered these fees.