**UNPUBLISHED**

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

THE MEDICAL PROTECTIVE COMPANY;
ST. PAUL FIRE & MARINE INSURANCE
COMPANY,

  *Plaintiffs-Appellees,*

v.

NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURGH,
PENNSYLVANIA,

  *Defendant-Appellant.*

No. 00-1173

Appeal from the United States District Court
for the Eastern District of Virginia, at Richmond.
Richard L. Williams, Senior District Judge.
(CA-99-589)

Argued: November 1, 2000

Decided: January 4, 2002

Before WIDENER, WILKINS, and NIEMEYER, Circuit Judges.

Reversed and remanded with instructions by unpublished per curiam
opinion.

## COUNSEL

**ARGUED:** Christopher E. Hassell, GILBERG & KIERNAN, Washington, D.C., for Appellant. Rodney Kyle Adams, LECLAIR RYAN, P.C., Richmond, Virginia, for Appellees. **ON BRIEF:** Kelvin L.

Newsome, LECLAIR RYAN, P.C., Richmond, Virginia, for Appellees.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

## OPINION

PER CURIAM:

This appeal arises from a dispute among three insurance companies over the effect of competing "other insurance" clauses. Appellees, St. Paul Fire & Marine Insurance Company (St. Paul) and The Medical Protective Company (Medical Protective), brought suit seeking to recover a pro rata share of the cost of defending and settling a medical malpractice action from Appellant National Union Fire Insurance Company (National Union). The district court found that each of the three insurance policies provided primary coverage of the insured and entered summary judgment against National Union and in favor of Medical Protective and St. Paul. Because we conclude that National Union's "other insurance" clause made its policy excess insurance in this case, we reverse the grant of summary judgment to Appellees and remand with instructions to enter judgment for National Union.

I.

This dispute arises from a medical malpractice action against Linda Frey, a certified nurse practitioner. At the time of the alleged malpractice, Frey had liability insurance coverage from all three companies: she had personally purchased coverage from National Union and St. Paul, and she was an additional insured under a policy issued to her employer by Medical Protective. Frey notified all of her insurers of the claim.

Each of the three insurance policies contains an "other insurance" clause.[1] The St. Paul policy contained a "pro rata" other insurance clause:

[1]An "other insurance" clause applies when two or more insurance policies cover the same risk for the benefit of the same person. See Barry R.

A professional liability claim that's covered under this agreement may also be covered under other insurance. If it is, we'll pay that portion of the claim equal to our percentage of the total amount of insurance covering the claim. But we won't pay more than our limits of coverage.

J.A. 29. Both the Medical Protective and National Union policies contained "excess" other insurance clauses. The Medical Protective clause provided as follows:

The insurance afforded by this policy is primary insurance, except when the insured has other valid and collectible insurance applicable to a loss covered by this policy, in which event this insurance shall be excess over such other valid and collectible insurance.

*Id.* at 35. The National Union clause provided:

This insurance is excess over other valid and collectable insurance except insurance written specifically to cover as excess over the limits of liability that apply in this policy.

*Id.* at 15.

Consistent with its role as the primary insurer, St. Paul assumed the

---

Ostrager & Thomas R. Newman, *Handbook on Insurance Coverage Disputes* § 11.01 (10th ed. 2000). There are three basic types of "other insurance" clauses: pro rata, excess, and escape. *See id.* § 11.02. A pro rata clause typically provides that, in the event other insurance covers the same loss, the insurer will pay its pro rata share of the loss, generally determined by the ratio of the limit of its policy to the sum of the limits of all the policies covering the same claim. *See id.* § 11.02[a]. An excess clause generally provides that when there is other primary coverage, the insurer's liability is limited to the amount by which the loss exceeds the coverage provided by the other primary insurance, up to the limit of the excess policy. *See id.* § 11.02[b]. An escape clause generally provides that, in the event other insurance covers the loss, the insurer is not liable for any loss. *See id.* § 11.02[c].

defense of the malpractice action. Medical Protective also contributed to the expenses of the defense.[2] After trial, a jury awarded $850,000 to the plaintiff. Frey appealed, and the case was settled for $713,840 while the appeal was pending. In addition to the amount of the settlement, St. Paul and Medical Protective spent over $340,000 in fees and expenses. Appellees thereafter brought this action seeking contribution from National Union.

Following a hearing on the parties' cross-motions for summary judgment, the district court ruled in favor of Appellees. Without stating so explicitly, the district court apparently concluded that the "other insurance" clauses at issue were mutually repugnant. Ruling from the bench, the court stated that each of the three policies provided primary coverage and that liability should be prorated among the three insurers based on the total amount of potential coverage provided by each policy. The district court thus denied National Union's motion for summary judgment, granted Appellees' motion for summary judgment, and entered judgment against National Union in the amount of $210,861.06.

## II.

This case presents the question of whether National Union's excess "other insurance" clause can be reconciled with St. Paul's pro rata "other insurance" clause so that both clauses may be given effect, or whether the clauses cannot be reconciled and are therefore mutually repugnant.[3] A minority of courts have adopted the position taken in

---

[2]Appellees argue that Medical Protective was contractually obligated to defend Frey. National Union argues that Medical Protective's defense of Frey was voluntary because Medical Protective's "other insurance" clause, like National Union's, provided that in the event of other insurance Medical Protective's coverage would be excess. Because we need not answer the question of whether Medical Protective was obligated to defend Frey in order to resolve the matter on appeal, we do not address it.

[3]Although Medical Protective also seeks to recover some of the costs of litigating and settling the suit against Frey, the terms of the "other insurance" clause in its policy are not relevant to our resolution of the appeal.

MEDICAL PROTECTIVE CO. v. NATL UNION FIRE INS.     5

*Lamb-Weston, Inc. v. Oregon Automobile Insurance Co.*, 341 P.2d 110, 119 (Or. 1959), that dissimilar "other insurance" clauses are irreconcilable and therefore mutually repugnant. *See Jones v. Medox, Inc.*, 430 A.2d 488, 492 (D.C. 1981) (en banc) (observing that "[t]he *Lamb-Weston* rule presents an appealingly simple and no-nonsense way to deal with the vagaries of insurance policies"). In such cases, the courts have treated the insurers as each providing primary insurance and have prorated their liability. *See, e.g.*, *Lamb-Weston*, 341 P.2d at 119.

However, a majority of courts dealing with the question have concluded that dissimilar "other insurance" clauses can indeed be reconciled. *See Jones*, 430 A.2d at 491. When a pro rata clause conflicts with an excess clause, courts applying the majority rule generally conclude that the policy containing the excess clause provides secondary coverage and the policy containing the pro rata clause provides primary coverage. *See id.*

Because the district court sat in diversity, we must apply the law of Virginia as articulated by the Supreme Court of Virginia or as we predict the Supreme Court of Virginia would rule were the case before it. *See Nature Conservancy v. Machipongo Club, Inc.*, 579 F.2d 873, 875 (4th Cir. 1978) (per curiam). We are aware of no Virginia case deciding the precise question before us. However, in *GEICO v. Universal Underwriters Insurance Co.*, 350 S.E.2d 612 (Va. 1986), the Virginia Supreme Court provided us with sufficient guidance to conclude how the court would decide the question before us.

*GEICO* required the court to determine which of two competing uninsured motorist policies provided primary coverage. *See GEICO*, 350 S.E.2d at 613. One policy contained an excess "other insurance" clause, and the other contained an escape "other insurance" clause.

---

Because we decide this case by giving effect to the competing "other insurance" clauses, we need not and do not address the argument that there was no common obligation among the parties allowing a cause of action for contribution against National Union.

*See id.* In its analysis, the Virginia Supreme Court declined to follow cases concluding that dissimilar "other insurance" clauses are mutually repugnant and reconciled the two clauses. *See id.* at 615-16. In light of *GEICO*, we conclude that the Virginia Supreme Court would adopt the majority rule of reconciling competing "other insurance" clauses when it is possible to do so.

Appellees make no attempt to distinguish *GEICO*. Rather, they simply argue that we should be guided by a decision of the Fairfax County Circuit Court. *See American Bankers Ins. Co. of Fla. v. Jefferson Pilot Fire & Cas. Co.*, 21 Va. Cir. 3 (1989) [hereinafter *Jefferson Pilot*]. In *Jefferson Pilot*, the court construed conflicting excess and pro rata "other insurance" clauses as mutually repugnant and ordered the insurance companies to allocate the liability pro rata. *See id.* at 9. However, in reaching its conclusion, the court in *Jefferson Pilot* ignored *GEICO* and misapplied two other decisions of the Virginia Supreme Court. The cases on which the state circuit court relied do not stand for the proposition that *dissimilar* "other insurance" clauses are mutually repugnant but stand instead for the unexceptional and inapposite rule that "other insurance" clauses that are *alike* (other than pro rata clauses) are mutually repugnant. *See Aetna Cas. & Sur. Co. v. Nat'l Union Fire Ins. Co.*, 353 S.E.2d 894, 897 (Va. 1987) (ruling that two excess "other insurance" clauses were mutually repugnant); *State Capital Ins. Co. v. Mut. Assurance Soc'y Against Fire on Bldgs.*, 241 S.E.2d 759, 762 (Va. 1978) (same). We therefore decline to follow *Jefferson Pilot*, and St. Paul cites no other case that would undermine the teachings of *GEICO*.

Having concluded that *GEICO* requires us to reconcile the competing "other insurance" policies, we now turn to that task. As noted previously, National Union's "other insurance" clause provided that its coverage was "excess over other valid and collectable insurance," J.A. 15, while the St. Paul policy contained a pro rata "other insurance" clause. Under the majority rule, a reference to other valid and collectible insurance is construed as a reference to other *primary* insurance. *See Jones*, 430 A.2d at 491.

> It follows, then, that the policy containing the pro rata clause is other valid and collectible primary insurance that triggers application of the excess clause in the second policy. The

excess clause in the second policy therefore is given full effect and that carrier is liable only for the loss after the primary insurer had paid up to its policy limits. The policy containing the excess clause, however, is not considered to be other valid and collectible primary insurance for the purpose of triggering the operation of the pro rata clause, because when a stated contingency occurs, that is, when there is other valid and collectible primary insurance available to the insured, the policy containing the excess clause becomes secondary coverage only.

*Id.* We therefore conclude that St. Paul was the primary insurer. Because the claim against Frey did not exhaust the $3,000,000 limit of St. Paul's coverage, National Union had no duty to pay a share of the costs of the settlement.[4]

### III.

For the reasons set forth above, we conclude that National Union's coverage in this case was excess and that St. Paul's coverage was primary. It was therefore error for the district court to enter judgment against National Union. Accordingly, we reverse and remand with instructions for the district court to enter judgment in favor of National Union and against St. Paul and Medical Protective.

*REVERSED AND REMANDED WITH INSTRUCTIONS*

---

[4]Neither did National Union have a duty to pay for any of the costs of Frey's defense. Virginia law at the time of the alleged malpractice limited Frey's exposure to liability at $1,000,000. *See* Va. Code Ann. § 8.01-581.15 & note regarding 1999 amendment (Michie 2000 & Supp. 2001). Thus, because St. Paul's coverage limit was $3,000,000, National Union had no duty to defend Frey. *See Brenner v. Lawyers Title Ins. Corp.*, 397 S.E.2d 100, 102 (Va. 1990) (recognizing that, though insurer's duty to defend is broader than its duty to pay, insurer has no duty to defend "if it appears clearly that the insurer would not be liable under its contract for any judgment based upon the allegations").