374 S.E.2d 58 (1988)
VIRGINIA FARM BUREAU MUTUAL INSURANCE COMPANY
v.
Robert Benjamin GIBSON.
Record No. 860481.
Supreme Court of Virginia.
November 18, 1988.
*59 Matthew B. Murray, Charlottesville (Madeline J. Bradstock, McLean, Richmond and Fishburne, Charlottesville, on briefs), for appellant.
L.B. Chandler, Jr. (Chandler, Franklin & O'Bryan, Norfolk, on brief), for appellee.
Present: All the Justices.
THOMAS, Justice.
In this case of first impression in the Commonwealth, we consider the validity of a provision in the uninsured motorist portion of a Virginia insurance policy which required the insured to secure the insurer's consent prior to settlement with any person or organization "who may be legally liable" for causing bodily injury or property damage.[1] We also consider the validity of the subrogation clause contained in the "Conditions" portion of the insurance policy in question.[2] The trial court held that both provisions were void. We disagree.
*60 On May 16, 1984, Robert Benjamin Gibson was driving an automobile east on Route 250 near Ivy, Virginia. The automobile was insured under a family policy issued by Virginia Farm Bureau Mutual Insurance Company (Farm Bureau) to Gibson's parents. That policy contained uninsured motorist coverage in the amount of $100,000. At the point where Gibson was driving, Route 250 was three lanes wide. An unknown motorist, John Doe, was in the outside lane driving west. Another motorist, Michael Neil Buckingham, who was also driving west, moved into the middle lane to pass John Doe. John Doe suddenly veered left into Buckingham's lane. Buckingham responded by swerving left into the eastbound lane where his vehicle collided head-on with Gibson's. Gibson sustained substantial personal injuries.
Gibson retained counsel and filed suit against both Buckingham and John Doe (the Tort Action). Gibson served John Doe by serving a copy of the motion for judgment upon Farm Bureau pursuant to Code § 38.1-381(e1) (now Code § 38.2-2204).[3] Gibson alleged in that suit that the accident was the result of the joint and several negligence of the two defendants.
Prior to trial of the Tort Action, Gibson  acting without Farm Bureau's consent  settled with Buckingham for $35,000. Gibson then nonsuited Buckingham, entered into a covenant not to sue, and proceeded to trial solely against John Doe. At all pertinent times, Buckingham was protected by a liability insurance policy in the amount of $100,000.
Farm Bureau defended John Doe on the ground that Buckingham's negligence had caused the accident. The jury returned a $70,000 verdict against John Doe. Gibson demanded that Farm Bureau pay $35,000 of the $70,000 verdict, using the $35,000 from Buckingham as a set-off against the full amount of the verdict. Farm Bureau refused to pay, contending that Gibson had breached the policy and prejudiced the insurer by settling with Buckingham without Farm Bureau's consent.
Gibson then filed the instant action against Farm Bureau to compel payment of the $35,000. The trial court considered the matter on stipulated facts and held that, despite the policy language, Gibson was entitled to settle with Buckingham without Farm Bureau's consent. The trial court concluded that the consent-to-settlement provision and the subrogation provision were conditions which restricted the insured's right to recover under the policy and that as such, they ran afoul of Code § 38.1-381(g).[4] The trial court stated, in a written opinion, that the insurer cannot demand from the insured anything beyond that which the insurance statute requires. Moreover, the trial court pointed out that in the Tort Action, Gibson and Farm Bureau were adversaries with no need to cooperate. Finally, the trial court concluded that the challenged provisions were contrary to the policy in favor of settlements evidenced by Code § 8.01-35.1, the release and covenant-not-to-sue statute.
On appeal, Farm Bureau argues that the consent-to-settlement and subrogation provisions do nothing more than protect the insurer's right to subrogation which is specifically granted in Code § 38.1-381(f). That subsection provides as follows:
Any insurer paying a claim under the endorsement or provisions required by subsection (b) of this section shall be subrogated to the rights of the insured to whom such claim was paid against the person causing such injury, death or damage and such person's insurer, notwithstanding that it may deny coverage for any reason, to the extent that payment was made.
*61 As such, according to Farm Bureau, there is no conflict between the challenged policy provisions and the insurance statute. Moreover, Farm Bureau contends that Code § 8.01-35.1 is concerned with settlements in tort cases and, thus, does not apply here because Farm Bureau is not a tort-feasor and has no liability in tort whatever.
The trial court ruled that the subrogation provision in the statute had no application to the dispute because, according to the trial court, it "does not give the insurance carrier any rights until it actually pays a claim." Thus, in declaring void the consent-to-settlement and the subrogation provisions, the trial court found it unnecessary to analyze whether the two provisions protected statutory subrogation rights.
By the trial court's logic, the only way Farm Bureau could invoke Code § 38.1-381(f) would be to pay Gibson money which Farm Bureau says it did not owe, then seek a return of that same money from an entity which Gibson had already released. In our opinion, the application of Code § 38.1-381(f) does not require such an illogical, circuitous approach. We do not think that Farm Bureau is required by Code § 38.1-381(f) to pay first then complain later about infringements upon its subrogation rights when it was obvious at the outset that any rights Farm Bureau could have had against Buckingham had already been surrendered by Gibson. We hold that the Code section in question grants to an insurer a presently protectable right to preserve subrogation even though the right to be paid in subrogation cannot be enforced until some time in the future.
Thus, Farm Bureau was perfectly justified in using the subrogation clause in its policy to put its insureds on notice that they must not undermine the insurer's subrogation rights. We are persuaded that the provision was, as Farm Bureau argues, basically a notice provision declaring the existence of a right granted by statute.
Farm Bureau argues that, whereas the subrogation provision is a notice provision, the consent-to-settlement provision is the direct mechanism for protecting the right of subrogation. Without such a provision, Farm Bureau argues, an insured could eliminate the right to subrogation before the insurer could even contemplate enforcing that right.
According to Farm Bureau, the instant case is a good example of the exposure an insurer faces when its insured settles without consent. Farm Bureau submits that in a joint tort-feasor situation of the type Gibson alleged in the Tort Action, the uninsured motorist carrier would pay in only two situations: where the uninsured motorist was solely liable or where joint liability was established between an uninsured motorist and an insured motorist but the insured motorist's coverage was insufficient to pay the judgment. In the instant appeal, Farm Bureau contends that by settling with Buckingham, Gibson foreclosed a legal determination of liability as between Buckingham and John Doe. Farm Bureau points out that no court has ever ruled that Buckingham was not liable, at least in part, for the accident. Farm Bureau further submits that had Buckingham been liable, even in part, his liability carrier would have had to pay Gibson's entire $70,000 judgment. Farm Bureau adds that in a joint liability situation, had Farm Bureau paid Gibson first, it would have stood in Gibson's shoes with a claim against Buckingham for the full judgment. But, because of Gibson's conduct, Buckingham has escaped with paying only one-half the judgment.
We are convinced that Farm Bureau is correct. In Virginia, uninsured motorist protection does not provide insurance for an uninsured motorist; it provides insurance to the insured motorist. In effect, it is a safety net to give an injured insured a fund from which to recover where the tortfeasor either has no insurance or has inadequate insurance. By its very nature, uninsured motorist coverage is not intended to be the ultimate source of payment where any tort-feasor liable in part for the injury to the insured has adequate resources to pay the judgment. The consent-to-settlement clause protects the insurer's power to preserve potential sources of recovery. *62 Thus, the clause prevents an uninsured motorist carrier from paying a claim when another source of funds should pay.
In Dravet v. Vernon Fire & Cas. Ins. Co., 454 N.E.2d 440 (Ind.App.1983), the Indiana Court of Appeals upheld a similar consent-to-settlement provision. There, as here, the issue was whether a consent-to-settlement provision in the uninsured motorist portion of an automobile insurance policy conflicted with the uninsured motorist statute. The Indiana Court canvassed the opinions then in existence on the subject and concluded that the cases upholding the validity of the provision were better reasoned. The Dravet court wrote that the cases upholding the clause "recognize the requirement that the insured obtain written consent from the insurer before making a settlement with anyone who may be legally liable for the accident or forfeit coverage is designed to protect the insurer's right of subrogation." Id. at 442. See also Tuthill v. State Farm Insurance Company, 19 Ill.App.3d 491, 311 N.E.2d 770 (1974); Spears v. Jackson, 398 N.E.2d 718 (Ind. App.1980). We agree with the Dravet analysis.
In arguing that the consent-to-settlement clause should be stricken, Gibson relies heavily upon Guthrie v. State Farm Mutual Automobile Insurance Co., 279 F.Supp. 837 (D.S.C.1968). In Guthrie, a federal district court in South Carolina applying Virginia law declared void a consent-to-settlement provision in the uninsured motorist portion of a Virginia automobile insurance policy. The decision was based on the court's conclusion that the provision conflicted with the statute. In reaching that conclusion, the Guthrie court did not discuss Code § 38.1-381(f), the subrogation portion of the statute. Because the Guthrie court simply ignored the subrogation statute, it avoided explaining how policy provisions based on a right granted by statute can be said to conflict with the statute from which the policy provisions derive. Guthrie's failure to analyze the interplay between the subrogation portion of the insurance statute and the statute's other provisions renders that opinion unpersuasive.
Gibson makes the further argument that the right to subrogation granted by statute to Farm Bureau applies only to settlements with the uninsured motorist. According to this argument, Farm Bureau has no rights of subrogation against the insured motorist but only against the uninsured motorist. The statutory language itself refutes this argument. Code § 38.1-381(f) gave the insurer subrogation rights "against the person causing such injury, death or damage and such person's insurer." (Emphasis added.) The italicized words would be meaningless unless the subrogation rights of the insurer ran against insured tort-feasors as well as uninsured tort-feasors. Thus, based on the very wording of the statute, there can be no doubt that if Buckingham was a person who might be liable, then Farm Bureau had subrogation rights against him and against his insurer.
Gibson next argues that he was free to settle with Buckingham because Buckingham was not a "person ... who [might] be legally liable" for Gibson's injuries. According to this argument, all the evidence established that John Doe alone was liable. Gibson finds it significant that in his suit against John Doe, Doe's defense was that Buckingham was solely responsible for the accident. Consequently, Gibson argues that the jury verdict against John Doe was tantamount to an exoneration of Buckingham. The point that Gibson misses is that no court has ever ruled that Buckingham was not liable in part or that John Doe was solely liable. And, as noted above, in a situation of joint liability Buckingham's carrier would have had to pay the entire judgment.
Gibson originally sued both Buckingham and John Doe. Only after Buckingham had paid $35,000 to settle did Gibson contend that there was no chance Buckingham could have been found liable. The same argument was made and rejected in Dravet:
The Dravets once asserted that Stacy was legally liable. They received a settlement from Stacy relying on a claim *63 that he was liable. Now they contend there was no way Stacy could be held liable. They cannot have it both ways. The settlement made in response to a claim of legal liability conclusively establishes Stacy as a "person ... who may be legally liable" for the accident.
454 N.E.2d at 443 (citation omitted). We agree. We are unconvinced that an insurance carrier would pay $35,000 on behalf of an insured who faced no liability for an accident in which that insured was involved.
We also reject Gibson's argument that the public policy which underlies Code § 8.01-35.1, the covenant-and-release statute, overrides the consent-to-settlement provision in the insurance policy. Code § 8.01-35.1 states that it applies in situations involving "two or more persons liable in tort for the same injury or the same property damage." (Emphasis added.) Gibson argues that because he had a right under Code § 8.01-35.1 to settle with either Buckingham or John Doe, who were allegedly liable to him in tort, he had the further right to disregard the policy provisions in the insurance contract between himself and Farm Bureau. Gibson is mixing apples and oranges. Farm Bureau is not a tort-feasor. It has no liability to anyone in tort. It does not stand in the shoes of John Doe, a tort-feasor. Farm Bureau is bound to Gibson by contract only. In our opinion, the public policy in favor of settlement of tort suits, which is contained in Code § 8.01-35.1, simply has no bearing on the question whether an insured must comply with policy provisions in order to collect insurance money in lieu of damages from a tort-feasor. Were we to adopt Gibson's argument, we would permit a general statutory provision in one part of the code to repeal the specific grant of subrogation rights contained in the insurance provisions of the code. This we will not do.
For all the foregoing reasons, we hold that the trial court erred in declaring void the subrogation and consent-to-settlement clauses here in dispute. Therefore, the judgment of the trial court will be reversed and final judgment entered for Farm Bureau.
REVERSED AND FINAL JUDGMENT.
NOTES
[1] The consent-to-settlement provision reads as follows:

This insurance does not apply:
(a) to bodily injury or property damage with respect to which the insured or his legal representative shall, without written consent of the company, make any settlement with any person or organization who may be legally liable therefor.
[2] The subrogation provision reads in pertinent part as follows:

In the event of any payment under this policy, the company shall be subrogated to all the insured's rights of recovery therefor against any person or organization and the insured shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. The insured shall do nothing after loss to prejudice such rights.
[3] No issue was raised concerning which version of the uninsured motorist law to apply. The parties and the trial court applied the 1985 version and we will do likewise.
[4] Code § 38.1-381(g) provided in pertinent part that nothing "may ... be required of the insured except the establishment of legal liability...."