PRESENT:  All the Justices

STEPHEN RANDOLPH SEALS

                                          OPINION BY
v.  Record No. 081331        JUSTICE LEROY F. MILLETTE, JR.
                                       April 17, 2009
ERIE INSURANCE EXCHANGE


          FROM THE CIRCUIT COURT OF THE CITY OF PETERSBURG
                    Pamela S. Baskervill, Judge

     In this appeal, we consider whether the circuit court

erred in determining that a customer who was injured while

test driving an automobile dealership's motor vehicle was not

entitled to underinsured motorist coverage under the

automobile dealership's garage keeper's insurance policy.

                           BACKGROUND

     Stephen Randolph Seals was injured in an accident with an

underinsured driver while test driving a vehicle owned by

Atlantic Motors, Inc. (Atlantic).  Seals made a claim against

Erie Insurance Exchange (Erie), Atlantic's insurer, for

underinsured motorist coverage.  Thereafter, Erie brought a

declaratory judgment action against Seals to determine whether

Seals was entitled to underinsured motorist coverage under

Erie's "Pioneer Garage / Auto Insurance Policy" (the Erie

policy).  The circuit court held that Seals was not entitled

to such coverage.

     The circuit court based its decision on its

interpretation of the language in the Erie policy.  The

circuit court noted that the Erie policy's "Uninsured/Underinsured Motorists Coverage Endorsement" (the UM/UIM endorsement) provides: "We will pay, in accordance with the Virginia Uninsured Motorists Insurance Law, all sums that **anyone we protect** is legally entitled to recover as damages from the owner or operator of **an uninsured motor vehicle**."[1] The UM/UIM endorsement contains a definitions section. According to the definitions section, " '**anyone we protect**' means . . . anyone else **occupying** a **covered auto**." The definitions section of the UM/UIM endorsement also states, " '**covered auto**' means a motor vehicle . . . with respect to which the **bodily injury** or **property damage** liability coverage of the policy applies."

In order to determine whether the vehicle Seals test drove was a "covered auto" in this situation, the circuit court considered a different part of the policy, the "Liability Protection" section, to determine whether the "**bodily injury** or **property damage** liability coverage of the policy applies." The "Liability Protection" section of the policy states: "We will pay all sums **anyone we protect** legally must pay for **property damage** to **autos** and property of others left in the care of **anyone we protect** in **your garage**

_____

[1] According to the Erie policy, "[a]n **uninsured motor vehicle** also means an **underinsured motor vehicle**."

2

**operations**."  Under the same section, there is a subsection titled "Persons We Protect," which provides:

> The term '**anyone we protect**' means any person or organization listed below . . . (2) Anyone else while using an **auto we insure** with **your** permission, except . . . (d) **your** customer who has other available insurance with limits at least equal to those required by law in the state where the **auto** is garaged.

Based on this language and the fact that Seals had "other available insurance with limits at least equal to those required by law in the state where the auto is garaged," the circuit court determined that Seals was not entitled to either liability or underinsured motorist coverage under the policy. The circuit court then stated that "[C]ode 38.2-2206 requires [underinsured motorist coverage] matching the liability limits."  The circuit court concluded that "since there is no liability [coverage] provided under this policy[,] consistent with [Code §] 38.2-2205 no [underinsured motorist coverage] need be provided."  The circuit court entered a final order awarding judgment in favor of Erie.  We granted Seals this appeal.

DISCUSSION

Seals contends the circuit court's interpretation of the Erie policy was erroneous.  Specifically, Seals argues that he was entitled to underinsured motorist coverage under the Erie policy because he was occupying a "covered auto," as defined

3

by the policy.  Seals also asserts that Code § 38.2-2206 requires Erie to afford him underinsured motorist coverage.

In response, Erie argues that the circuit court correctly determined that Seals was not entitled to coverage under the Erie policy because Seals was not occupying a "covered auto." Erie also contends Code § 38.2-2206 does not require it to provide Seals with underinsured motorist coverage because Seals was not entitled to liability coverage under the Erie policy.

This case can be resolved by interpreting the insurance contract.  Therefore, we do not reach the issue whether Code § 38.2-2206 requires Erie to afford Seals underinsured motorist coverage.  In considering the issue before us, we are guided by well-settled principles of appellate review.  "The interpretation of a contract presents a question of law subject to de novo review."  PMA Capital Insurance Co. v. US Airways, Inc., 271 Va. 352, 357-58, 626 S.E.2d 369, 372 (2006).  Additionally,

> [c]ourts interpret insurance policies, like other contracts, in accordance with the intention of the parties gleaned from the words they have used in the document.  Each phrase and clause of an insurance contract should be considered and construed together and seemingly conflicting provisions harmonized when that can be reasonably done, so as to effectuate the intention of the parties as expressed therein.

4

*Floyd v. Northern Neck Insurance Co.*, 245 Va. 153, 158, 427 S.E.2d 193, 196 (1993) (internal quotations and citations omitted).  Furthermore,

> [i]nsurance policies are contracts whose language is ordinarily selected by insurers rather than by policyholders.  The courts, accordingly, have been consistent in construing the language of such policies, where there is doubt as to their meaning, in favor of that interpretation which grants coverage, rather than that which withholds it. Where two constructions are equally possible, that most favorable to the insured will be adopted. Language in a policy purporting to exclude certain events from coverage will be construed most strongly against the insurer.

*St. Paul Fire & Marine Insurance Co. v. Nusbaum & Company, Inc.*, 227 Va. 407, 411, 316 S.E.2d 734, 736 (1984).

As an initial matter, the circuit court correctly determined that Seals is not entitled to liability coverage under the Erie contract.  Indeed, this is permissible under Code § 38.2-2205(A)(1), commonly known as the "garage keeper's exclusion," which provides, in pertinent part:

> Each policy or contract of bodily injury or property damage liability insurance which provides insurance to a named insured in connection with the business of selling . . . motor vehicles, against liability arising from the ownership, maintenance, or use of any motor vehicle incident thereto shall contain a provision that the insurance coverage applicable to those motor vehicles shall not be applicable to a person other than the named insured . . . if there is any other valid and collectible insurance applicable to the same loss covering the other person under a policy with limits at least equal to the financial responsibility requirements specified in § 46.2-472.

5

Seals had other insurance which met the requirements of Code § 46.2-472.  Thus, Seals was not entitled to liability coverage under the Erie policy according to the language in its "Liability Protection" section, which is permissible under Code § 38.2-2205(A)(1).  However, the fact that the Erie policy does not afford Seals liability coverage is irrelevant to whether the policy provides him underinsured motorist coverage.  This Court has recognized that there is a distinction between liability coverage and uninsured motorist coverage:[2]

> Liability coverage protects an insured from liability incurred on account of his own negligence; [uninsured motorist] coverage protects an insured against damages sustained as the result of the negligence of an uninsured motorist.  When tort litigation ensues, the liability insurer is the insured's defender; the [uninsured motorist] insurer is the insured's adversary.

GEICO v. Universal Underwriters Insurance Co., 232 Va. 326, 329, 350 S.E.2d 612, 614 (1986) (discussing predecessor versions of Code §§ 38.2-2205 and -2206).[3]

Moreover, while the "garage keeper's exclusion" in Code § 38.2-2205 allows businesses that sell vehicles to exempt

---

[2] While previous cases have distinguished uninsured motorist coverage from liability coverage, those distinctions equally apply to underinsured motorist coverage, which is a similar concept and also addressed in Code § 38.2-2206.

[3] The predecessor statute to Code §§ 38.2-2205 and -2206 was Code § 38.1-381.

certain individuals from liability coverage, it is inapplicable to underinsured motorist coverage.  GEICO, 232 Va. at 328-29, 350 S.E.2d at 613-14.  In GEICO, we said:

> Had the General Assembly intended to create an exception to the [uninsured motorist] mandate for the benefit of a garage keeper and its insurer, it could have done so in language such as that employed in [other subsections from the predecessor statute, Code § 38.1-381].  It did not do so.  We do not assume that the omission was inadvertent.  Rather, we conclude that the legislature was consciously and deliberately selective.

Id. at 329, 350 S.E.2d at 614.

Our inquiry now focuses on whether the Erie policy provides Seals with underinsured motorist coverage.  We conclude that based upon the language of the Erie policy, the policy does provide underinsured motorist coverage to Seals. In our interpretation of the Erie policy, we begin as the circuit court did with the UM/UIM endorsement, which states: "We will pay, in accordance with the Virginia Uninsured Motorists Insurance Law, all sums that **anyone we protect** is legally entitled to recover as damages from the owner or operator of **an uninsured motor vehicle**."  The UM/UIM endorsement's definitions section states that " '**anyone we protect**' means . . . anyone else **occupying** a **covered auto**" and " '**covered auto**' means a motor vehicle . . . with respect to which the **bodily injury** or **property damage** liability coverage of the policy applies."

7

At this point in its analysis, the circuit court relied upon the "Liability Protection" section of the policy and incorrectly focused on whether Seals, as the driver of the vehicle, was entitled to liability coverage to determine if he was entitled to underinsured motorist coverage. The circuit court's analysis was erroneous.

The UM/UIM endorsement clearly included Seals under the provision "anyone we protect," as referenced above. When the circuit court looked to the "Liability Protection" section of the Erie policy, the result was to change the analysis of "covered auto" from the vehicle to the person, so that even though the vehicle was covered under the UM/UIM endorsement, Seals the individual was excluded from coverage. In the UM/UIM endorsement, Erie included exclusions to which coverage does not apply and also limitations to damages payable under this coverage. There is no language in the UM/UIM endorsement excluding Seals from "anyone we protect" occupying "a covered auto." Erie did not exclude customers who had liability insurance, like Seals, from UM/UIM coverage.

The proper inquiry, as the Erie policy directs, is whether Seals was operating a "motor vehicle . . . with respect to which the **bodily injury** or **property damage** liability coverage of the policy applies." To determine if Seals was operating such a vehicle, we turn to the "Autos We

Insure" section of the policy, which provides: "The **Declarations** shows [sic] which of the following are **autos we insure** under this policy." The "Declarations" section of the Erie policy states: "AUTOS WE INSURE: ANY AUTO-OWNED, HIRED & NON-OWNED AUTOS." Seals was operating a vehicle owned by Atlantic, and therefore, pursuant to the Erie policy, he was operating a "motor vehicle . . . with respect to which the **bodily injury** or **property damage** liability coverage of the policy applies." Thus, Seals is entitled to underinsured motorist coverage under the Erie policy. According to the "Declarations," such coverage shall be in the amount of $500,000.

## CONCLUSION

For the reasons stated, we will reverse the judgment of the circuit court and enter final judgment in favor of Seals.

<u>Reversed and final judgment.</u>