## CIRCUIT COURT OF HENRICO COUNTY

Auto-Owners Insurance Co.

v.

James H. Morris

April 1, 2011

Case No. CL10-2185

BY JUDGE GARY A. HICKS

This matter came before the Court on February 4, 2011, for a hearing on the parties' cross-motions for summary judgment. The Court, having considered the file record, the arguments of counsel, and their respective legal memoranda, rules as follows.

### Background

On November 27, 2008, James Morris, while driving, was struck by another vehicle that failed to yield to the right of way. Mr. Morris was injured in the accident. At the time of the accident, Mr. Morris was insured by Auto-Owners Insurance Company (hereinafter Auto-Owners) and held two policies. The first policy is a primary automobile insurance policy that also provides $500,000 in uninsured and underinsured coverage, policy number 46-377-636-00. The second policy is an Executive Umbrella Insurance Policy (hereinafter umbrella policy), policy number 46-375-404-01, which provides $2,000,000 in coverage.

Auto-Owners brought a declaratory judgment action in this Court seeking declaration as to the extent, if any, it has a duty to provide underinsured motorist (hereinafter UIM) coverage to Mr. Morris under the terms of the umbrella policy. The parties do not contest that the primary policy provides Mr. Morris with $500,000 in UIM coverage and that Mr. Morris' injuries sustained in the accident are covered under that policy.

On September 24, 2010, the parties were before the Court, also on cross-motions for summary judgment, regarding the issue of coverage

under the umbrella policy. In an opinion letter dated November 10, 2010 this Court ruled that the umbrella policy does provide UIM coverage to Mr. Morris under an endorsement attached to that policy. That endorsement is as follows:

### EXCLUSION OF PERSONAL INJURY TO INSUREDS
#### FOLLOWING FORM

We do not cover personal injury to you or a relative. We will cover such injury to the extent that insurance is provided by an underlying policy listed in Schedule A.

An Order pursuant to the opinion letter was entered on December 8, 2010.

The parties are now before the Court on the issue of the amount of coverage provided under the umbrella policy for Mr. Morris' injuries.

### Analysis

When interpreting insurance policies, the Court examines those policies like it does all other contracts and determines the intent of the parties by the words they use in the document. *Virginia Farm Bureau Mutual Ins. Co. v. Williams*, 278 Va. 75, 80, 677 S.E.2d 299 (2009). "Provisions of an insurance policy must be considered and construed together, and any internal conflicts between provisions must be harmonized if reasonably possible to effectuate the parties' intent." *Id.* As with all contracts, the words used in an insurance policy are given their plain meaning as written. *Id.* at 81; *Hill v. State Farm Mutual Auto. Ins. Co.*, 237 Va. 148, 152, 375 S.E.2d 727 (1989). However, if the policy language is ambiguous, that language must be construed "in favor of coverage and against the insurer." *Virginia Farm Bureau*, 278 Va. at 81; *Hill*, 237 Va. at 153; *GEICO v. Moore*, 266 Va. 155, 165, 580 S.E.2d 823 (2003). "A term is ambiguous when it is susceptible to two or more meanings." *Hill*, 237 Va. at 153. The burden is on the insurer to make exclusionary language clear enough to avoid any ambiguity. *Saint Paul Fire & Marine Ins. Co. v. S. L. Nusbaum & Co.*, 227 Va. 407, 412, 316 S.E.2d 734 (1984).

In reading the terms of the umbrella policy, and as both parties stated during argument, the purpose of the umbrella policy is to provide additional coverage in excess of the amount provided by the underlying policies. Auto-Owners takes the position that the amount of coverage under the umbrella policies limited to an additional $500,000, the amount of UIM coverage in the underlying policy, because the endorsement provides coverage "to the extent that insurance is provided by an underlying policy". Mr. Morris, however, takes the position that he is entitled to the full $2,000,000 coverage

limit under the umbrella policy because that is the only way to give effect to both the limit of liability declaration and the endorsement.

A review of the policy reads in pertinent part:

EXECUTIVE
SEE SCHEDULE A FOR UNDERLYING LIMIT
REQUIRED

LIMIT OF LIABILITY: $2,000,000 Each Occurrence. . . .
BASE UMBRELLA PREMIUM: 160.00
ADDITIONAL CHARGES

Number of Private Passenger Automobiles/Motorhomes
 (over 1): 2: 51.00
Watercraft:
 26 ft 96 Crest Pontoon 60 HP 15 MPH: 22.00
Owned Residence Rented to Others
 1-1 Family Dwelling(s): 11.00
Excess Millions Charge: 122.00
Discount(s): -114.00

TOTAL POLICY PREMIUM: 252.00

(Compl. Ex. C, p. 3.)

SCHEDULE A
(Underlying Insurance Requirements)

(A) COMPREHENSIVE PERSONAL LIABILITY
 Single Limit: $300,000 ea. occ.
(B) AUTOMOBILE LIABILITY
 Single Limit: $500,000
(E) WATER CRAFT LIABILITY
 Single Limit: $500,000 ea. occ.
(H) GENERAL LIABILITY
 Single Limit: $300,000

UNDERLYING CARRIER SCHEDULE

(A) Owners Insurance Company
(B) Auto-Owners Insurance Company
(E) Owners Insurance Company
(H) Owners Insurance Company

(Compl. Ex. C, p. 4.)

Under the terms of the umbrella policy, Mr. Morris has met his obligations by having the required underlying policies. Contractually, Auto-Owners' policy shows that Mr. Morris has underlying coverage for (A), (B), (E), and (H). Therefore, Mr. Morris meets all policy definitions of Insured. (*See* Compl. Ex. C, p. 7.) This does away with the applicability of the exclusion as argued by Auto-Owners. Mr. Morris has paid his premiums and complied with all the terms of the policy as described in Schedule A. (Compl. Ex. C, p. 11.)

The only reasonable inference that can be drawn from reading the entire Executive Umbrella Insurance Policy is that Mr. Morris believed he was receiving $2,000,000 in coverage under that policy in addition to his coverage under the underlying policies. Mr. Morris obtained and maintained the underlying policies and paid the required premiums, which include an excess millions charge for the umbrella policy. This excess millions charge is further evidence that Mr. Morris was paying for the additional $2,000,000 limit of liability. In short, Mr. Morris complied with all of his obligations to Auto-Owners and now seeks the benefit of his bargain.

Furthermore, the language relied upon by Auto-Owners in the endorsement to exclude Mr. Morris is unclear. One reading the policy would have to decide if the coverage amount is $500,000, $2,000,000, or $2,500,000 based on the language used. The language is susceptible to more than one meaning. *See Lincoln Nat'l Life Ins. Co. v. Commonwealth Corrugated Container Corp.*, 229 Va. 132, 136-37, 327 S.E.2d 98 (1985).

The Court finds that the wording of the endorsement, as it applies to the amount of coverage, is ambiguous. The endorsement provides that the umbrella policy will provide coverage for personal injury "to the extent that insurance is provided by an underlying policy." Whether this is intended to apply to the extent of coverage only or to the extent and amount of coverage is unclear. "Language in a policy purporting to exclude events from coverage will be construed most strongly against the insurer." *Seals v. Erie Ins. Exchange*, 277 Va. 558, 562, 674 S.E.2d 860 (2009).

After analyzing the umbrella policy and considering the arguments of counsel as well as the law, the Court hereby finds that Mr. Morris is entitled to $2,000,000 in coverage under the terms of the umbrella policy for his injuries sustained in the November 27, 2008, accident. "[W]hen an insurer seeks to limit coverage under a policy, the insurer must use language that is reasonable, clear, and unambiguous." *Virginia Farm Bureau*, 278 Va. at 81.