Main Street
Arena Sports, L.L.C.

v.

Erie Insurance Exchange

July 17, 2012

Case No. CL 2011-416

By Judge Edward L. Hogshire

Main Street Arena Sports, L.L.C. ("Main Street"), owner and operator of the Charlottesville Ice Park ("the Arena"), seeks a declaratory judgment establishing coverage under an insurance policy ("the Agreement") entered into with the defendant, Erie Insurance Exchange ("Erie"), effective September 14, 2010. Specifically, Main Street alleges that the damages it suffered following the failure of the heat exchanger in the Charlottesville Ice Park's water heating system are compensable under the Agreement. Erie contends that it has no liability for Main Street's loss because the heat exchanger failed due to corrosion and corrosion is an excluded cause of loss under the Agreement. The parties have stipulated to the material facts of the case. There was an *ore tenus* hearing conducted on June 26, 2012, and the Court has considered the memoranda and arguments of counsel. For the reasons set forth below, the Court finds coverage has been established.

## Statement of Facts

There is no disagreement as to the facts, as the parties have filed a joint Stipulation of Facts containing the following salient features: (1) that the Arena has an ice-chilling system that is used to freeze and maintain the ice on the surface of its rink; (2) that the Arena also has an under-floor heating system, which is an ancillary system to the Arena's ice-chilling system that utilizes some of the ice chilling system's excess heat to warm the ground beneath the rink, among other things; (3) that the under-floor heating system consists of a heat exchanger and a series of pipes located beneath the rink; (4) that the heat exchanger consists of a "bundle" of metal "tubes" encased

in a metal "shell"; (5) that as brine is pumped through the tubes of the heat exchanger, it absorbs heat from hot ammonia gas flowing throughout the surrounding shell; (6) that on or about March 19, 2011, a leak in one of the tubes inside the under-floor heating system's heat exchanger caused a significant amount of the system's ammonia to be released; (7) that this leak was caused by corrosion (the inside of the tube in question was exposed to an acidic environment causing the iron-based tube to oxidize and corrode); (8) that as a direct result of the leak inside the heat exchanger, the Arena lost both cooling and heating capacity; and (9) that consequently, the plaintiff sustained significant damages. (Stipulation of Facts 1-5.)

## Questions Presented

1. Whether the plain language of the Mechanical and Electrical Breakdown Coverage Endorsement as purchased with the Ultraflex Policy provides coverage for Main Street's heat exchanger?

2. Whether, if the heat exchanger is covered, the corrosion exclusion nonetheless exempts Erie from liability?

## Legal Standard

"Courts interpret insurance policies, like other contracts, by determining the parties' intent from the words they have used in the document. Provisions of an insurance policy must be considered and construed together, and any internal conflicts between provisions must be harmonized, if reasonably possible, to effectuate the parties' intent." *Virginia Farm Bureau v. Williams*, 278 Va. 75, 80 (2009). "In legally construing an endorsement to an insurance policy, the endorsement and policy must be read together, and the policy remains in full force and effect except as altered by the words of the endorsement." *PBM Nutritionals, L.L.C. v. Lexington Ins. Co.*, 283 Va. 624, 635 (2012) (quoting 2 Holmes, *Appleman on Insurance*, 2d § 5.1); *see also* Michie's Jurisprudence, *Insurance*, § 24, 517-18. In the case of doubt or uncertainty and if the language of the policy is capable of two constructions, it is to be construed strictly against the insurer and liberally in favor of the insured. *See, e.g. Seales v. Erie Ins. Exch.*, 277 Va. 558 (2009). Specifically, "[l]anguage in a policy purporting to exclude certain events from coverage will be construed most strongly against the insurer." *Id.* at 562 (citing *St. Paul Fire & Marine Ins. Co. v. Nusbaum & Co., Inc.*, 227 Va. 407, 411 (1984)).

*Analysis*

A. *Whether Main Street's Heat Exchanger is Covered under the Plain Language of the Mechanical and Electrical Breakdown Coverage Endorsement*

The pertinent portion of the Agreement is the "Ultraflex Commercial Property Coverage Part," which is broken up into Sections. Section I begins by naming and describing what property is covered under each of five coverage groups. (Stipulation Exhibit 1 MSA – Erie 0026.) The first of these coverage groups is "Building(s)," and specifically enumerates "[b]uilding equipment and fixtures servicing the premises" as a covered item. (*Id.*) Section II simply states that "[t]his policy insures against risk of 'loss'[1] under" each coverage group, except as excluded in the policy. (*Id.* at 0030.) Section III then lists the exclusions; Section III-A lists eleven exclusions that apply to all five coverage groups, while Section III-B adds fifteen exclusions that apply only to the first three coverage groups. (*Id.* at 0030-33.) One of these fifteen exclusions states that losses caused by "wear and tear, rust or corrosion" are not covered. (*Id.* at 0031.)

In addition, Main Street purchased a "Mechanical and Electrical Breakdown Coverage" endorsement ("the Endorsement"). (*Id.* at 0054.) The Endorsement explicitly "modifies insurance provided under" the "Ultraflex Commercial Property Coverage Part" discussed above, in that the policy adds coverage for "direct physical damage to covered property for 'loss' caused by 'mechanical, electrical, or pressure systems breakdown' on the premises." (*Id.*) "Mechanical, electrical, or pressure systems breakdown" is defined as "a fortuitous event that causes direct physical damage to 'covered equipment',," and must be one of five specified events. (*Id.* at 0055.) "Covered equipment" is defined as "covered property . . . [t]hat generates, transmits or utilizes energy, including electronic communications and data processing equipment." (Stipulation Exhibit 1 MSA – Erie 0055.) The last of these specified events is " '[l]oss' or damage to hot water boilers or other water heating equipment caused by or resulting from any condition or event inside such boilers or equipment." (*Id.*)

Thus, the damage caused by the failure of Main Street's heat exchanger is covered under the plain language of the Endorsement. A heat exchanger is "any device . . . for transferring heat energy to a cooler medium from a warmer one." *New World Dictionary of the American Language* 646 (2d College ed. 1980). Such a device "generates, transmits, or utilizes energy," and thus, must be considered "covered equipment." Because the heat exchanger at issue is used to heat a brine solution (i.e., "water heating

---

[1] Words and phrases in quotations within the contract indicate defined terms; "loss" is defined as "direct and accidental loss of or damage to covered property." (Stipulation Exhibit 1 MSA – Erie 0049.)

equipment"), and the corrosion constituted an "event or condition inside such . . . equipment" that caused direct physical damage, the failure of the heat exchanger must be considered a "mechanical, electrical, or pressure systems breakdown" under the Endorsement. Therefore, barring a valid exclusion, the damage to Main Street's heat exchanger is covered by the Agreement.

## B. *Whether the Corrosion Exclusion Exempts Erie from Liability*

The central disagreement in this case concerns the interaction between the coverage to Main Street's heat exchanger provided by the Endorsement and the Exclusion concerning damage caused by corrosion enumerated in a separate part of the policy. While Section III-B.1.a purports to exclude "loss" caused by "[w]ear and tear, rust or corrosion," it is necessary to determine to what extent, if any, this provision is modified by Main Street's purchase of the Endorsement. Main Street can recover by showing that (1) the corrosion provision does not apply to the Endorsement *or* (2) the corrosion provision and the Endorsement are irreconcilable, in that coverage is both excluded and provided, and thus the language must be construed against Erie as both the drafter and insurer.

The Endorsement modifies the exclusions under Section III by deleting, replacing, and adding certain provisions. (*Id.* at 0054.) Specifically, the Endorsement provides that five specific exclusions are deleted. The five deleted provisions all directly reference mechanical or electrical equipment: B.1.k ("machines or machinery by rupture, bursting, or disintegration of their rotating or moving parts resulting from centrifugal or reciprocating force"); B.1.l ("[m]echanical breakdown"); B.8 ("[b]y explosion of, including resulting damage to, steam boilers, steam pipes, steam turbines. . . ."); B.9 ("hot water boilers or other water heating equipment, caused by a condition or occurrence within the boilers or equipment, other than an explosion"); and B.10 ("[b]y electricity including electric arching other than lightning. . . ."). (*Id.*) Since these five provisions are the *only* exclusions that directly reference mechanical or electrical equipment, it is likely that they were deleted to avoid the ambiguity that would necessarily follow if they remained alongside Main Street's coverage for "mechanical, electrical, and pressure systems breakdown[s]" as provided by the Endorsement.

Notably, the corrosion exclusion is not among the deleted provisions. However, before concluding that this fact negates Main Street's claim, it is necessary to examine the other modifications made by the Endorsement. Specifically, Section III-A.11, an exclusion, is replaced with new language. (*Id.*) The original paragraph A.11 is directed at "failure of power, communication, water or other utility service supplied to the insured premises," and specifies certain failures that are not covered. (*Id.* at 0031.) Similarly, the new language states that Erie will "not cover 'loss' by the

failure of power or other utility service supplied to the insured premises, however caused, if the failure occurs away from the insured premises." (*Id.* at 0054.) The provision then continues with an exception that addresses "mechanical, electrical, or pressure systems breakdown":

> However, we will pay for "loss" resulting from "mechanical, electrical, or pressure systems breakdown" to any transformer, electrical apparatus, or any "covered equipment" that is:
> 1. Located on or within 1,500 feet of the insured premises;
> 2. Owned by the building owner at your premises or owned by a public utility company; and
> 3. Used to supply telephone, electricity, air conditioning, heating, gas, water, or steam to the insured premises.

(*Id.* at 0054.) It is unclear on its face why this "exception to the exclusion" was added, though there are two possible explanations.

First, it could have been added in an effort to update paragraph A.11, which previously addressed just "power, communication, water, or other utility service[s]," in light of the added coverage provided by the Endorsement, that is, an individual reading the policy could be confused as to whether "mechanical, electrical, or pressure systems" are or are not considered "power, communication, water, or other utility service[s]," particularly but not exclusively because of the obvious overlap between "electrical systems" and "power services." Thus, replacing paragraph A.11 with the new language clarifies that, while "power, communication, water, or other utility service[s]" are still excluded, the newly added "mechanical, electrical, or pressure systems breakdown" coverage from the Endorsement is not excluded. Furthermore, "mechanical, electrical, or pressure systems breakdown" to "any transformer, electrical apparatus, or any 'covered equipment'" that meets the three enumerated requirements is also covered, regardless of whether the item in question might simultaneously be characterized as a power or utility service. Under this interpretation, Main Street's loss is covered.

Second, the added language referencing "mechanical, electrical, or pressure systems breakdown" could be construed as applying *only in the context of power failure*. Under this interpretation, the purpose of the updated A.11 language is to say that "loss" resulting from "mechanical, electrical, or pressure systems breakdown," which is itself the result of a "failure of power or other utility service," is *not covered* unless the three enumerated requirements are met. Under this construction, because the damage to Main Street's heat exchanger was initially caused by corrosion and not power failure, Erie is not liable for Main Street's loss.

Because the issue is ambiguous, the language must be construed against Erie as both the insurer and drafter of the policy. *See, e.g., Seales v. Erie*

*Ins. Exch.*, 277 Va. 558 (2009). Had Erie meant to exclude only certain types of "mechanical, electrical, or pressure systems breakdown[s]" that were the result of power failure, it could have so specified. Therefore, as it was determined above that Main Street's heat exchanger is "covered equipment," if it also meets the three enumerated requirements, then it is covered under the policy. Because the heat exchanger is located on the insured premises, owned by the building owner, and used to supply heating to the insured premises, it is covered.

To be sure, it is also necessary to consider the final paragraph of the updated A.11 language, which names a number of exclusions to which "this coverage" does not apply:

> With respect to this coverage, we will not pay for a "mechanical, electrical, or pressure systems breakdown" caused by or resulting from fire; lighting; windstorm or hail; explosion . . . smoke; aircraft or vehicles; riot or civil commotion; vandalism; sprinkler leakage; falling objects; weight of snow, ice, or sleet; freezing; collapse; flood or earth movement.

(*Id.* at 0054.) There is some disagreement between the parties as to what the phrase "[w]ith respect to this coverage" is referring. This Court agrees with defense counsel's characterization in its reply brief that it "is referring to the limited coverage provided by the exception to exclusion A.11." (Def.'s Opp. to Pl.'s Mot. for Summ. J. 7.) Because corrosion is not listed, the updated Paragraph A.11 must be construed as granting coverage to Main Street's heat exchanger. However, even if the phrase is referring to the broad grant of coverage provided by the Endorsement, the same conclusion follows. This is because many of the exceptions are also cited elsewhere in the contract; for example, smoke in Section III-B.1.h, freezing in Section III-B.6, collapse in Section III-B.7, and explosion in Section III-B.8, among others. To argue that, despite not being listed, the corrosion exception in Section III-B.1.a nonetheless applies would be to render the other exceptions superfluous.

By reading the contract this way, the "corrosion provision" is still valid and is not rendered meaningless, which allows the Agreement to be harmonized as the Virginia Supreme Court instructs. *See Virginia Farm Bureau v. Williams*, 278 Va. 75, 80 (2009). Indeed, the "corrosion provision" is still applicable to any "Buildings," "Business Personal Property and Personal Property of Others," or "Additional Income Protection" not governed by the Endorsement. For example, recovery would still be barred for losses sustained to "[p]ersonal property . . . for the service and maintenance of the buildings and premises, including but not limited to . . . [f]ire extinguishing equipment; [o]utdoor furniture; [f]loor coverings; [a]ppliances used for refrigerating, ventilating, cooing, dishwashing, or laundering; and [f]lag

poles and outdoor lights" as the result of corrosion. (Stipulation Exhibit 1 MSA – Erie 0026.) Thus, while the "corrosion provision" does not apply to Main Street's heat exchanger, which is covered by the Endorsement, Erie is still exempt from liability for damage to other covered property caused by corrosion.

## Conclusion

For the above-stated reasons, and with respect to *coverage only*, the Plaintiff's Motion for Declaratory Judgment will be granted. The issue of damages is reserved for further proceedings.