PRESENT:  All the Justices

ANN ELIZABETH LLEWELLYN

v.  Record No. 181108

ANN MICHELLE WHITE

OPINION BY
JUSTICE S. BERNARD GOODWYN
August 15, 2019

FROM THE CIRCUIT COURT OF HENRICO COUNTY
Gary A. Hicks, Judge

In this appeal, we consider whether the circuit court erred when it held that a settlement

agreement between the plaintiff and her underinsured motorist carrier did not entitle the

underinsured defendant to a statutory reduction of the jury verdict rendered against her, pursuant

to the offset provision of Code § 8.01-35.1.

BACKGROUND

On July 21, 2013, Ann Michelle White (White) was driving on Ziontown Road in

Henrico County, Virginia, when Ann Elizabeth Llewellyn (Llewellyn) drove out of her driveway

and struck White's vehicle.  White suffered serious injuries to her hips, shoulders, and knee,

requiring extensive surgeries as a result of the collision.  After the accident, Llewellyn was

charged with and pled guilty to failing to yield to oncoming traffic.

At the time of the accident, White had a $1 million motor vehicle insurance policy

through Erie Insurance Exchange (Erie).  Llewellyn had automobile liability insurance coverage

totaling $250,000.

White filed an action against Llewellyn in the Circuit Court for the County of Henrico,

for personal injuries she suffered as a result of the automobile accident caused by Llewellyn's

negligence.  In her amended complaint, White asked for $3 million in compensatory damages for

personal injuries she suffered, including pain and suffering, and $350,000 in punitive damages.

White served the amended complaint on Llewellyn. Intending to rely upon the uninsured/underinsured motorist (UIM) coverage provision of her policy with Erie, White also served a copy of her lawsuit against Llewellyn upon Erie, as required by Code § 38.2-2206.

Prior to trial, White settled her potential UIM claims against her insurance provider, Erie, for $750,000. The settlement between White and Erie was "in full and complete settlement of all claims" White had against her insurer. White agreed to release Erie from liability for "any and all claims" arising out of the lawsuit White had filed against Llewellyn. In addition to the monetary payment, Erie agreed with White that Erie would waive its right, arising from Code § 38.2-2206 or otherwise, to be subrogated to the rights White had against Llewellyn. Llewellyn was not a party to the settlement agreement.

On March 27, 2017, the circuit court entered an order dismissing the amended complaint as to Erie, pursuant to the settlement agreement between White and Erie. The lawsuit otherwise remained on the court's docket.

The circuit court held a jury trial on the lawsuit against Llewellyn, and on May 2, 2018, the jury returned a verdict awarding White damages of $1,500,000 against Llewellyn. Llewellyn made a motion to apply Code § 8.01-35.1 to reduce the verdict against her because of the $750,000 paid to White by White's insurer, Erie. Llewellyn argued that Erie, as White's UIM insurance carrier, was liable for the same injury as Llewellyn, and that because of the settlement between White and Erie, Llewellyn was statutorily entitled to an offset of $750,000.

White argued that Code § 8.01-35.1 did not apply because Erie, unlike Llewellyn, was not "a person liable for the . . . injury" to White. She argued that Code § 8.01-35.1 was enacted to enable the release of one joint tortfeasor without affecting the remaining tortfeasors, and Erie and Llewellyn were not joint tortfeasors. She also contended that the settlement between Erie

2

and White only concerned a contract claim, not the resolution of a tort dispute, and Code § 8.01-35.1 did not apply.

The circuit court held a hearing on Llewellyn's motion on June 8, 2018. It denied the motion and ruled that Code § 8.01-35.1 did not entitle Llewellyn to an offset. The circuit court entered a final order, which awarded White a judgment against Llewellyn for the full amount of the jury's verdict. Llewellyn appeals.

This Court granted one assignment of error, which states:

> The trial court erred by refusing to apply the underinsured carrier's $750,000 settlement with Respondent to the final judgment order as a statutory offset pursuant to Va. Code [§] 8.01-35.1, and by entering judgment for the entire $1,500,000 jury verdict.

## ANALYSIS

Llewellyn argues that the circuit court erred when it refused to apply Code § 8.01-35.1 to reduce the $1.5 million verdict against her because of White's $750,000 settlement with Erie. Llewellyn contends that UIM carriers are nominal defendants, have an independent right to defend the tort action, and become legally obligated to pay only when the insured is legally entitled to recover. She asserts that as a nominal defendant, the UIM carrier is a "person[] liable for the same injuries giving rise to the underlying tort claim," and that she is therefore, entitled to an offset of the settlement amount pursuant to Code § 8.01-35.1.

Further, Llewellyn argues the circuit court's decision violates doctrines prohibiting double recovery and/or unjust enrichment. She contends that Code §§ 8.01-35.1 and 38.2-2206 work together to permit settlement prior to a verdict, but offset the verdict with the amount of the settlement; otherwise the injured party may be unjustly enriched by recovering more than the amount of the jury verdict.

3

This Court reviews an issue of statutory interpretation de novo. *Boynton v. Kilgore*, 271 Va. 220, 227 (2006). In such review, this Court seeks to effectuate the intent of the legislature as expressed by the plain meaning of the words used in the statute. *Id.* Thus, this Court applies the plain language unless the words are ambiguous or such application would render the law internally inconsistent or incapable of operation. *Id.* at 227 & n.9.

Code § 8.01-35.1(A)(1) provides:

> When a release or a covenant not to sue is given in good faith to one of two or more *persons liable for the same injury* to a person or property, . . . [the release or covenant not to sue] shall not discharge any other person from liability for the injury . . . unless its terms so provide; but *any amount recovered against the other person or any one of them shall be reduced by any amount stipulated by the covenant or the release*.

(Emphases added.) The release or covenant not to sue "shall be considered by the court in determining the amount for which judgment shall be entered." *Id.*

Before Code § 8.01-35.1, the common law provided that the release of one of several joint tortfeasors released all tortfeasors, even if language in the settlement agreement stated otherwise. *Hayman v. Patio Prods., Inc.*, 226 Va. 482, 486 (1984).[1] The purpose of enacting Code § 8.01-35.1 was to encourage settlement without discharging from liability other persons alleged to be liable for the same injury "who prefer to have their liability determined in litigation." *Id.* at 487; *Thurston Metals & Supply Co. v. Taylor*, 230 Va. 475, 485 (1986).

To be "liable" is to be "responsible or answerable in law; legally obligated" or "subject to or likely to incur a fine, penalty, etc." Black's Law Dictionary 1099 (11th ed. 2019). "Same" is defined as "[*i*]*dentical* or equal; resembling in every relevant respect." *Id.* at 1607 (emphasis

---

[1] In 2007, the General Assembly removed the terms "tort-feasor" and "liable in tort" from Code § 8.01-35.1 to expand the statute's application to injuries other than tortious injury. 2007 Acts ch. 443; *William H. Gordon Assocs., Inc. v. Heritage Fellowship, United Church of Christ*, 291 Va. 122, 146 (2016).

4

added).  Further, "injury" is defined as "the violation of another's legal right, for which the law provides a remedy; a wrong or injustice."  *Id.* at 939.  Thus, under the plain meaning of Code § 8.01-35.1(A), a defendant is entitled to a reduction of the judgment entered against him by the amount the plaintiff receives in settlement from another who is also responsible for the identical wrong, harm, or damage as the defendant.

In this case, the jury rendered a verdict against Llewellyn for her liability in tort that resulted from her negligent conduct towards White.  We must consider whether, by virtue of its UIM policy with White, Erie was responsible for the same wrong or harm as that represented by the jury award against Llewellyn.

Negligence is the failure to use ordinary care for the safety of another, which causes injury to the other.  *Yeary v. Holbrook*, 171 Va. 266, 287 (1938).  "Negligence carries with it *liability for consequences that, in view of the circumstances, could reasonably have been anticipated* by a prudent person."  *Interim Personnel of Central Virginia, Inc. v. Messer*, 263 Va. 435, 442 (2002) (emphasis added).

By comparison, when providing UIM coverage, an insurer is contractually "obligate[d] . . . to make payment for bodily injury or property damage caused by the operation or use of an underinsured motor vehicle *to the extent the vehicle is underinsured*."  Code § 38.2-2206(A) (emphasis added).[2]  UIM coverage "protects an insured against *damages* sustained as

---

[2] A vehicle is "underinsured"

> to the extent that[] the total amount of bodily injury and property damage coverage applicable to the operation or use of the motor vehicle and available for payment for such bodily injury or property damage . . . is less than the total amount of uninsured motorist coverage afforded any person injured as a result of the operation or use of the vehicle.

Code § 38.2-2206(B).

5

the result of the negligence of an [underinsured] motorist," but the insurance company is not a tortfeasor, has no liability in tort to the injured insured, and does not stand in the place of the tortfeasor. *Seals v. Erie Ins. Exch.*, 277 Va. 558, 563 (2009) (emphasis added); *Virginia Farm Bureau Mut. Ins. Co. v. Gibson*, 236 Va. 433, 441 (1988).

> [U]ninsured motorist protection does not provide insurance for an uninsured motorist; it provides insurance to the insured motorist. *In effect, it is a safety net to give an injured insured a fund from which to recover where the tort-feasor either has no insurance or has inadequate insurance.* By its very nature, uninsured motorist coverage is not intended to be the ultimate source of payment where any tort-feasor liable in part for the injury to the insured has adequate resources to pay the judgment.

*Gibson*, 236 Va. at 438 (emphasis added).

Here, when the jury found Llewellyn negligent, it found that she failed to exercise ordinary care for White's safety, and that her failure caused White to suffer personal injuries. Because of Llewellyn's negligence, the jury found Llewellyn liable to White for $1.5 million in damages.

By contrast, Erie's payment to White was not to compensate White's personal injuries but to protect White against the potential inadequacy of Llewellyn's assets to pay the damages awarded against Llewellyn. Llewellyn was liable in tort for the compensable injuries White suffered because of Llewellyn's negligence, while Erie was liable in contract for White's potential under-compensation because of Llewellyn's inadequate motor vehicle insurance. In other words, if at the time of the accident, Llewellyn had a motor vehicle liability policy of $1 million, White's UIM policy would not have been triggered at all because UIM coverage only obligates the insurer to the extent the tortfeasor is underinsured.

Erie's contractual obligation was to pay White because of Llewellyn's inadequate motor vehicle insurance. That contractual obligation is not the same as Llewellyn's tort obligation to

pay for damages caused by her negligence. Therefore, Erie and Llewellyn are not "persons liable for the same injury" under Code § 8.01-35.1. Accordingly, Llewellyn is not entitled to an offset because of Erie's settlement agreement with its insured, White.

This conclusion is reflected by and consistent with the structure of Virginia's UIM statute, Code § 38.2-2206.

To recover under one's UIM policy, an insured who has instituted an action against the underinsured motorist does not need to name the insurer as a defendant, but must serve upon the insurer a copy of the process "as though the insurer were a party defendant." Code § 38.2-2206(F). If the insurer pays a claim under the UIM policy, the insurer is then "*subrogated to the rights of the insured* to whom the claim was paid against the person causing the injury, death, or damage and that person's insurer, . . . *to the extent that payment was made*." *Id.*(G) (emphases added).

White served "a copy of the process upon [her UIM] insurer in the manner prescribed by law, as though the insurer were a party defendant." Code § 38.2-2206(F). Llewellyn states that service upon the UIM carrier makes the insurer a "nominal defendant" in the lawsuit. Llewellyn's description of Erie's involvement in the lawsuit is telling. "Nominal" means "existing in name only." Black's Law Dictionary 1260 (11th ed. 2019). A nominal party is a "party to an action who has no control over it and no financial interest in its outcome." *Id.* at 1351.

The UIM carrier is given the right to participate in the lawsuit in order to protect its interest in its potential contractual obligation to its insured. The UIM carrier, even if served with process, does not become a joint tortfeasor with the underinsured defendant. Although it may be

7

contractually liable to pay the injured insured, the insurer is not a defendant because it is not liable for the injury caused by the tortfeasor.

Further, nothing in Code § 38.2-2206 reflects that the injured party's UIM policy is intended to benefit the tortfeasor. By providing subrogation rights to the UIM insurer, the General Assembly has expressed its intent that payment by a UIM insurer to its insured does not reduce the amount owed by the tortfeasor. In giving an insurer which has paid a claim under a UIM policy the right to be subrogated to the rights of the injured "against the person causing the injury," Code § 38.2-2206(G) provides that the insurer is not liable for the personal injury caused by the underinsured, and the underinsured remains "the ultimate source of payment" of the judgment. *See Gibson*, 236 Va. at 438.

Subrogation is merely the "substitution of one person in the place of another with reference to a lawful claim, demand or right so that he who is substituted succeeds to the rights of the other in relation to the debt or claim, and its rights, remedies, or securities." Black's Law Dictionary 1595 (4th ed. 1957). Specific to the insurance context, subrogation is the "principle under which an insurer that has paid a loss under an insurance policy is entitled to all the rights and remedies belonging to the insured against a third party with respect to any loss covered by the policy." Black's Law Dictionary 1726 (11th ed. 2019). To the extent that a UIM carrier makes a payment to its insured, it has the right to substitute itself in place of its insured in seeking payment from the underinsured defendant up to the amount of that insurance payment.

The tortfeasor owes the amount of the judgment against her not covered by her own liability insurance. Payment by the plaintiff's UIM carrier to its insured does not entitle an underinsured tortfeasor to an offset or credit on the judgment against her. It merely allows the UIM carrier to substitute itself for its insured in seeking to enforce any judgment against the

8

tortfeasor. If – as happened here – the UIM insurer agrees with its insured not to substitute itself for the insured in seeking to enforce the judgment against the underinsured tortfeasor, the agreement between the insured and his or her UIM carrier has no financial consequences as far as the underinsured individual is concerned. It only results in that tortfeasor owing money to the plaintiff that it would otherwise have owed to the plaintiff's UIM carrier. Importantly, subrogation does not increase the amount owed by a defendant, it only changes the identity of the individual or entity who has the right to collect any judgment against or payment made by that defendant.

By statute, the right of subrogation belongs to the UIM carrier. Code § 38.2-2206(G). It can exercise or waive that right as it pleases. If it desires to do so, the UIM carrier can make an agreement with a defendant not to pursue the recovery that the carrier's subrogation rights entitle it to seek from the defendant. In such an instance, if there is an agreement between the UIM carrier and the defendant, the defendant may be entitled to credit against any judgment received by the plaintiff, up to the amount owed to the UIM insurer pursuant to its subrogation rights. However, no such agreement was struck in this case. In this instance, Erie sought no consideration from and made no agreement with Llewellyn to forgive any of the amount that Erie had the statutory right to seek from Llewellyn. Instead, Erie agreed with White not to interfere with White's right to collect from Llewellyn any amounts Llewellyn was found to owe White. Llewellyn is not entitled to any credit for money she owes pursuant to a judgment against her that she has not paid.

Llewellyn claims that White being allowed to retain the full benefit of the money paid by her UIM policy, in addition to her judgment against Llewellyn, offends common law principles that prohibit double recovery and unjust enrichment. She notes that if White collects on the

9

judgment entered against Llewellyn in addition to the settlement from White's UIM carrier, White will have recovered more than she was awarded by the jury for her injuries. She argues that equity supports application of a credit to her against the judgment she owes White, to prevent any possibility of such a double recovery by White. While asserting that White stands to gain a windfall because Erie has waived its right of subrogation, Llewellyn fails to note that if she is given credit for the payment made by White's insurance company, Llewellyn will gain a windfall by having to pay only half of the judgment entered against her.

We acknowledge that there is a tension between the collateral source rule and the principle against double recovery. Recently, this Court recognized that "[t]he collateral source rule is a narrow *exception to both the default rule against double recoveries* and the principle that compensatory damages cannot leave a plaintiff better off than before the injury." *Dominion Res., Inc. v. Alstom Power, Inc.*, 297 Va. 262, 270-71 (2019) (emphasis added). "Whenever a plaintiff has a source of recovery collateral to the defendant, it will either (1) give the plaintiff a double recovery and leave him or her in a better financial position than before the injury, or (2) permit the defendant to escape full liability for all damages resulting from his wrong." *Id.* at 271. "In many collateral source rule cases, *the real issue is* not whether to overcompensate the plaintiff—it is instead *whether the breaching defendant or the collateral source should be primarily responsible* for compensation." *Id.* at 273 (emphases added).

It is settled law "that damages, recoverable of personal injuries inflicted through the negligence of another are *not to be reduced by reason of the fact that the injured party had been partly compensated for his loss by insurance which he has procured and for which he has paid*." *Acuar v. Letourneau*, 260 Va. 180, 189 (2000) (emphasis added). "A person who is negligent and injures another owes to the latter *full compensation* for the injury inflicted[,] . . . and

10

payment for such injury from a collateral source *in no way relieves the wrongdoer* of [the] obligation." *Id.* (emphases added) (alterations in original) (citation and internal quotation marks omitted).

> The collateral source rule purports to place upon the defendant-tort-feasor *the full burden* of his wrongdoing. If, however, the plaintiff's injury is the product of *the combined wrongdoings* of the defendant and a settling joint tort-feasor, the credit rule intercedes to ensure that the defendant will not be burdened with full restitution for an injury which . . . by settlement of a tort claim, the plaintiff implicitly *attributes in part to the settling party*.

*Acordia of Va. Ins. Agency v. Genito Glenn, L.P.,* 263 Va. 377, 387 (2002) (emphases added) (citation and internal quotation marks omitted). "The law contains no rigid rule against overcompensation," and "making tortfeasors pay for the damage they cause can be more important than preventing overcompensation." *McDermott, Inc. v. AmClyde*, 511 U.S. 202, 219 (1994).

Under similar circumstances as we face in this matter, the Supreme Court of North Carolina held that UIM coverage was a source collateral to the defendant, and that the defendant was not entitled to a reduction of the amount of the judgment plaintiff obtained against him on account of the existence of a UIM payment. *Hairston v. Harward*, 821 S.E.2d 384, 393 (N.C. 2018). The court noted that plaintiff's entitlement to proceeds from UIM coverage depends equally on proof of the defendant's negligence, as well as plaintiff's foresight in purchasing UIM coverage. *Id.* at 393-94. The court recognized that resolving whether to credit the amount of judgment with the insurance proceeds would inevitably result in a windfall to either party, and concluded

> the better option is to allow plaintiff to retain the "windfall" that results from his foresight in voluntarily electing to purchase [UIM] coverage rather than allowing defendant, who failed to purchase enough liability coverage to adequately compensate plaintiff for his injuries, to be the ultimate beneficiary of plaintiff's decision to procure additional insurance coverage.

11

*Id.* at 394.

We agree with the reasoning of the Supreme Court of North Carolina. It is consistent with that of the vast majority of other jurisdictions that have been called upon to decide this issue. *See Hairston*, 821 S.E.2d at 395 (citing *Johnson v. Gen. Motors Corp.*, 438 S.E.2d 28, 36 (W. Va. 1993); *Estate of Rattenni v. Grainger*, 379 S.E.2d 890, 890 (S.C. 1989); *International Sales-Rentals Leasing Co. v. Nearhoof*, 263 So.2d 569, 570 (Fla. 1972); *State Farm Mut. Auto. Ins. Co. v. Kern*, 976 N.E.2d 716, 720 (Ind. Ct. App. 2012); *Schwartz v. Hasty*, 175 S.W.3d 621, 628-29 (Ky. Ct. App. 2005)); *Stanford v. City of Flora*, 112 N.E.3d 136, 145 (Ill. App. Ct. 2018) ("[A]lthough Illinois courts generally disfavor a double recovery, this is a situation where a double recovery is appropriate because plaintiff bargained for such a double recovery when he purchased his underinsured motorist policy."); *Voge v. Anderson*, 512 N.W.2d 749, 752 (Wis. 1994) ("Any windfall in benefits should inure to the injured party, not to the tortfeasor."); *see also* 22 Am. Jur. 2d *Damages* § 421 (2019) ("The amount recoverable for personal injuries is not decreased by the fact that the injured party has been wholly or partly indemnified for the loss by proceeds from accident insurance if the tortfeasor did not contribute to the payment of the premiums.").

Consistent with this Court's jurisprudence and the General Assembly's intent as expressed in Code §§ 8.01-35.1 and 38.2-2206, the tortfeasor remains primarily responsible for fully compensating the plaintiff for the injury the tortfeasor has caused, and Llewellyn has not provided a sufficient reason to divert from this principle. White had the foresight to purchase more extensive motor vehicle insurance than statutorily required and, as the injured party, White should retain any windfall that results from her prudence. Llewellyn has failed to explain and we

12

have been unable to find any reason why the jury's award of damages for injuries she alone is responsible for should be reduced by White's insurance.

CONCLUSION

Accordingly, the circuit court did not err when it refused to reduce the judgment White obtained against Llewellyn by the amount of the proceeds White received from her UIM policy. The judgment of the circuit court is affirmed.

*Affirmed.*